**UNITED STATES of America**

v.

**Israel RUIZ, Jr., Defendant.**

**No. 88 Cr. 578 (PKL).**

United States District Court, S.D. New York.

Jan. 5, 1989.

Maria T. Galeno, Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., New York City, for U.S.

Murray Richman, Bronx, N.Y., Christine E. Yaris, New York City, for defendant Israel Ruiz, Jr.

## OPINION AND ORDER

LEISURE, District Judge.

The defendant Israel Ruiz, Jr. is charged with two counts of bank fraud, in violation of Title 18, United States Code, Sections 1014 and 2, and one count of perjury, in violation of Title 18, United States Code, Section 1623.

Defendant filed pre-trial motions seeking: (1) further discovery, including a bill of particulars, a witness list, and information concerning prior similar acts evidence which the government may offer at trial; (2) the dismissal of the Indictment on the grounds of prosecutorial misconduct before the grand jury and bad faith prosecution or, in the alternative; for the production of information relating to the grand jury process, and for the amendment and redaction of the Indictment; and (3) for a severance of Count Three from Counts One and Two.

### I. Discovery Material.

#### A. Exculpatory Evidence.

Defendant, relying on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requests pre-trial discovery of a broad range of information. The requested information essentially covers almost all material that the prosecution might have in its files.[1]

■ Almost all of the requests by defendant define material that is subject to production under the Jencks Act, 18 U.S.C. § 3500. It is fundamental that the prose-

---

1. The information that defendant urges the prosecution presently be required to divulge is extensive. It basically includes, in abbreviated summary:

 (1) prior criminal record information of prospective government witnesses; (2) prior bad act information on all prospective government witnesses; (3) consideration possibly given to such witnesses; (4) information regarding book, television, or other entertainment contracts by prospective witnesses; (5) any statement by a prosecution agent relating to any government action involving a prospective witness; (6) any threats or prosecutions made against any such witness; (7) information regarding complaints by a prospective witness against the government; (8) any other material which might reflect upon motivations of a prospective witness; (9) identification of all prior official statements by such witnesses; (10) identification of all judicial proceedings in which such an individual was involved; (11) any false statements made in connection to this case by a prospective witness; (12) identification of any prior statements made by prospective witness who served in a confidential informant capacity; (13) medical and psychiatric background information relating to such individuals; (14) identification of any statement by a prospective witness that is inconsistent with any other statement by that witness; (15) immunity information; and (16) any and all possible impeachment evidence.

 Defendant additionally requests (17) all of the above information, with respect to non-witness declarants whose statements will be offered in evidence. Defendant further seeks:

 (18) exculpatory information given before the grand jury; (19) identification of all persons known to have relevant knowledge; (20) information concerning internal discipline proceedings relating to law enforcement officers involved in the case; (21) information concerning commendations and awards relating to such officials; and (22) information pertaining to any lawsuits between prospective witnesses and defendant.

cution is not required to produce Jencks Act material on a government witness before that witness has testified on direct examination at trial.[2] To avoid delay at trial, the Government has agreed to produce Jencks Act material on the day before a government witness is to testify. Government's Memorandum of Law in Opposition to Defendant's Pretrial Motions, at p. 6.[3]

■■ Defendant has set forth no compelling reasons to justify a departure from the clear mandate of 18 U.S.C. § 3500. The Indictment sets forth the three charges clearly, and details the factual circumstances giving rise to those charges. This Court does not find a legal basis for ordering disclosure of statements by Government witnesses before their direct testimony at trial. *See, United States ex. rel. Lucas v. Regan,* 503 F.2d 1, 3 n. 1 (2d Cir.1974), *cert. denied,* 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975); *United States v. Sebastian,* 497 F.2d 1267, 1268–69 (2d Cir.1974).

Defendant nevertheless argues that *Brady* compels immediate production of much of the material sought. It is true that "the statutory restrictions [of § 3500] must be accommodated to the demands of due process." *United States v. Gleason,* 265 F.Supp. 880, 887 (S.D.N.Y.1967). It is conceivable that disclosure of material covered by the Jencks Act may be required, under *Brady* and the due process clause, to be made to the defendant before trial in order that the defendant might prepare and present an effective defense. As in *Gleason,* however, "no such adjustment seems necessary in this case." *Id.* at 887.

Defendant's broad requests, although made under *Brady,* seem to be, in effect, a demand to conduct a thorough review of the government's investigative file. The

law plainly does not support such discovery. *United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) ("The prosecutor is not required to deliver his entire file to defense counsel"); *United States v. LeRoy,* 687 F.2d 610, 618–19 (2d Cir.), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1982).

Disclosure is not warranted when the defendant has sufficient facts available to him which would enable him to take advantage of any exculpatory information. It is fundamental that if the "defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence," due process and *Brady* do not require disclosure. *United States v. Leroy,* 687 F.2d at 618 (citations omitted). *See also, United States v. Grossman,* 843 F.2d 78, 85 (2d Cir.1988); *United States v. Esposito,* 834 F.2d 272 (2d Cir.1987).

In the present case, defendant is certainly aware of the essential facts from which he could take advantage of exculpatory evidence. The Indictment clearly states the nature of the charges, and the persons, entities, and documents involved. Notwithstanding the defendant's plea of not guilty, he is in the best position to know the "essential facts."

■■ To require present disclosure of the material that defendant seeks would transform the due process concerns of *Brady* into a pretrial discovery tool. *Brady* establishes no general right of pretrial discovery, and gives rise to no *specific* pretrial remedies. *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845–846, 51 L.Ed.2d 30 (1977); *United States v. Evanchik,* 413 F.2d 950, 953 (2d Cir.1969); *United States v. Shakur,* 543 F.Supp. 1059, 1061 (S.D.N.Y.1982) ("*Brady* does not entitle a defendant to a general right of pre-

---

**2.** Title 18, United States Code, Section 3500 provides:

 (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a government witness or prospective government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has

testified on direct examination in the trial of the case.

**3.** The government's courtesy may even be more than this Court could require. *See, United States v. Algie,* 667 F.2d 569 (6th Cir.1982) (government not required, although strongly urged, to disclose Jencks Act information prior to the time mandated by statute).

trial discovery.") "Neither *Brady* nor any other case ... requires that disclosures under *Brady* must be made before trial." *United States ex. rel. Lucas v. Regan*, 503 F.2d 1, 3 n. 1 (2d Cir.1974), *cert. denied*, 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975).

■ Some of the specific requests that defendant has made clearly do encompass what may ultimately be *Brady* material, for instance exculpatory information given before the grand jury, names and addresses of persons with relevant knowledge whom the government will not call as witnesses, and perhaps certain impeachment evidence. *See, e.g., Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1984). Other requested information, for example the existence of agreements and other materials that would bear only on witness credibility, is exclusively § 3500 material and not discoverable before trial. *United States v. Massino*, 605 F.Supp. 1565, 1581 (S.D.N.Y. 1985); *United States v. Mitchell*, 372 F.Supp. 1239, 1257 (S.D.N.Y.1973).

The government has assured the Court and defense counsel that its *Brady* obligations will be fulfilled. The Court has no reason to doubt those assurances. The government must make such material available. The timing of those disclosures, within the context of the trial date presently set by the Court, must allow the defendant to prepare sufficiently and to present his defense. Further requests for immediate discovery, under the guise of *Brady*, are not presently appropriate. *United States v. Schwimmer*, 649 F.Supp. 544, 549 (E.D.N.Y.1986); *United States v. Kaminsky*, 275 F.Supp. 365, 367 (S.D.N.Y.1967).

**B. Bill of Particulars.**

■ The principles governing requests for a bill of particulars under Rule 7(f) are well settled. "A bill is appropriate to permit a defendant 'to identify with sufficient particularity the nature of the charge against him, thereby enabling defendant to prepare for trial, to prevent surprise, and

to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir.1988) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987). The decision to grant or deny a bill of particulars is within the sound discretion of the trial court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir.1984).

■ If the purposes of a bill of particulars are satisfied through other means, for instance discovery afforded to defendant's counsel, a request for a bill may be denied. *Panza*, 750 F.2d at 1148 (access to documents and meetings with government sufficient in 150–claim mail fraud case). If that discovery or those other means do not illuminate the nature of the government's case, of course, denial of a request for a bill may be improper. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987) (access to 4000 documents not sufficient to overcome the hinderance to defendant caused by government's refusal to provide bill.)

■ The present case is much simpler than either of the cases cited above. The significant concerns that can require bills in complex actions like RICO prosecutions, *see e.g., U.S. v. Davidoff*, 845 F.2d 1151, are not present here. The bank fraud counts charge the defendant with making false statements about his ownership interest in a supermarket. Defendant seeks to have the government specify whether the alleged falsity relates to the ownership, or the stated value, of the supermarket. Additionally, in Count Two it is charged that the defendant made false statements about debts owed to him. Defendant seeks to have the government specify whether the government's position is that defendant was not owed a debt, or whether the amount of the debt was misstated.

It is clear that the specificity of the indictment, coupled with the discovery opportunities afforded to defendant, the lack of time pressure, meetings with counsel for the government, and the simplicity of the counts, serve to fully apprise the defendant

of the nature of the charges against him. There will be no prejudicial surprise, or inability to plead double jeopardy in any subsequent prosecution. The defendant's request for a bill of particulars is therefore denied. *United States v. Panza,* 750 F.2d 1141 (2d Cir.1984).

### C. Pretrial Discovery of Witness List.

 Defendant seeks an order directing the government to identify all of its prospective witnesses. Defendant merely argues that production of such a list would not be onerous to the government, and makes a general protestation against "trial by ambush."

Defendant has not attempted to make any showing at all to support his request, as required by established law in this Circuit. The defendant has "made only an abstract, conclusory claim that such disclosure was necessary to [his] proper preparation for trial." *United States v. Cannone,* 528 F.2d 296, 301–02 (2d Cir.1975). Disclosure of the witness list is not required here, and, in fact, requiring its production would be an abuse of discretion. *Id.* at 302. *See also, United States v. Feola,* 651 F.Supp. 1068, 1138 (S.D.N.Y.1987); *United States v. Goldman,* 439 F.Supp. 337, 350–51 (S.D. N.Y.1977). The defendant's request for pretrial disclosure of a witness list is denied.

### D. Other Acts Evidence.

Defendant initially sought an order, pursuant to Rules 404(b) and 403 of the Federal Rules of Evidence, requiring the government to disclose evidence of prior similar acts of the defendant which the government intends to offer at trial. Defendant has unequivocally stated, through his counsel at oral argument, and in his Reply Memorandum of Law in Support of Pre-Trial Motions, that "he will offer one or more of the defenses enumerated in Rule 404." *Id.* at p. 22. Given the existence of such disputed issues with regard to intent and plans involving the supermarket

project, *see, United States v. Figueroa,* 618 F.2d 934, 942 (2d Cir.1980), the government has agreed to provide notice of other crimes evidence.

This particular motion is therefore moot; notice of the other crimes evidence will be given to the defendant forthwith, if this has not already occurred. The Court will evaluate, of course, such evidence under Rule 403, if the government ultimately seeks to introduce it at trial. *See, e.g., United States v. Arango–Correa,* 851 F.2d 54 (2d Cir.1988).

## II. Grand Jury Proceedings.

### A. Dismissal of the Indictment.

Defendant argues that various instances of prosecutorial misconduct relative to the grand jury proceedings should render the Indictment invalid. Defendant concedes that a high threshold must be met before dismissal of the Indictment would be appropriate. The Court finds that that threshold is not met in the present case. *See generally, Bank of Nova Scotia v. United States,* —— U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

Defendant argues that the Indictment should be dismissed for several reasons. Defendant's claims of impropriety include: resubmission of evidence to a second grand jury, excessive reliance on hearsay evidence before the grand jury, prosecutorial vindictiveness spurred by defendant's support of unpopular causes, and indictment for "relatively minor" offenses.

Two grand juries investigated the activities of defendant. Affidavit of Maria T. Galeno, Esq., sworn to on December 14, 1988 ("Galeno Affidavit"), ¶ 3–4. The first grand jury expired without ever having been presented with an Indictment.[4]

The second grand jury voted the Indictment against the defendant. Transcripts of prior grand jury proceedings were presented to that grand jury. Live witnesses also testified before the second grand jury, although the defendant did not.

---

**4.** That grand jury, therefore, never "rejected claims of wrongdoing" by the defendant, as he

initially claimed.

There were numerous communications between defendant's then-counsel Joseph Jaffe, Esq., and the Assistant United States Attorneys handling the prosecution, including statements to the effect that defendant declined to give further testimony. *See, e.g.,* Exhibits A and C, attached to Galeno Affidavit. The government did nothing to prohibit defendant from testifying before the second grand jury.

■■■■ The grounds upon which a grand jury indictment may be attacked are narrow, and the standards imposed are strict. The law is clear that "a defendant does not have a constitutional right to appear personally before the grand jury ... [n]or does a prospective defendant presently have a right to cross examine witnesses before the grand jury." *United States v. Ciambrone,* 601 F.2d 616, 622–23 (2d Cir. 1979). It is equally clear that an indictment may be based solely on hearsay evidence. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). *See also, United States v. Bari,* 750 F.2d 1169, 1176 (2d Cir.), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1984) ("We also reject the claim that reading the April transcript to the July grand jury rather than presenting [the live witness] in person infects the indictment.")

The Second Circuit has held that "[t]he extreme sanction of dismissal of an indictment is justified in order to achieve one or both of two objectives: first, to eliminate prejudice to a defendant in a criminal prosecution; second, 'to help to translate the assurances of the United States Attorneys into consistent performances by their assistants.'" *United States v. Fields,* 592 F.2d 638, 647 (2d Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (quoting *United States v. Estepa,* 471 F.2d 1132, 1137 (2d Cir.1972)).

The Supreme Court recently elaborated on the "prejudice" that *must* be shown by noting that "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States, supra,* 108 S.Ct. at, 2374 (quoting *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945–946, 89 L.Ed. 2d 50 (1986).

The "deterrence" justification for dismissing an indictment requires an equally extreme showing:

[P]roper regard for the public interest in the prosecution of crimes counsels restraint in dismissing an indictment for deterrence purposes unless the course of official misconduct is a demonstrated, long standing one. We have approved this extreme sanction only when the pattern of misconduct is widespread or continuous.

*United States v. Fields, supra,* 592 F.2d at 648. *See also, United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir.), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1977) ("only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to a grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury."); *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618–619, 38 L.Ed.2d 561 (1974).

■■■■ Applying these standards to the present situation, it is apparent that the indictment could not, and should not, be dismissed. The extent of the "misconduct" alleged by defendant consists of: the fact that there were two grand juries; the failure of defendant to testify before the second grand jury; use of hearsay; and statements by the prosecutor (to the *first* grand jury) that allegedly implied his disbelief of defendant's testimony. Even if defendant could establish all of these claimed transgressions, they do not rise to the level required for dismissal of an indictment, nor do they require this Court to conduct hearings to investigate the propriety of the grand jury proceedings.[5] The Court does

5. Defendant implies that by applying the established standards noted above, the Court ignores what happened in the grand jury, and "no appellate court has ever held that it matters not at all

not find an important infringement on the ability of the indicting grand jury to exercise independent judgment, and can discern no reason to believe that that judgment was improperly influenced. *Bank of Nova Scotia v. United States, supra,* 108 S.Ct. at 2376.

■ The vindictiveness and bad faith prosecution claims by defendant are also meritless. The thrust of defendant's arguments involve the asserted insignificance of the crimes charged, in comparison with the crimes that the government was allegedly seeking to establish. On the present record, the Court rejects the defendant's attenuated speculation about the motivations of the government, and his comparative assessment of the crimes with which he is charged. There is no "bad faith" basis here for dismissal of the indictment.

B. Discovery of Grand Jury Procedures.

Defendant initially sought the release of various information about the grand jury proceedings, in part to preserve his right to challenge the indictment on the basis of possible improprieties in the voting of the grand jury.[6] The government has satisfied that particular concern. Galeno Affidavit at ¶ 4.

■ Further discovery into the grand jury proceedings is not warranted. A defendant is not entitled to disclosure of grand jury minutes unless a showing of "particularized need" is made. *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). A similar showing is required before the Court will review the sufficiency or legality of the evidence presented to the grand jury. *United States v. Abrams,* 539 F.Supp. 378, 389 (S.D.N.Y.1982). "Unsupported suspicions

of grand jury abuse" are not sufficient to justify disclosure of grand jury minutes. *Abrams,* 539 F.Supp. at 389; *United States v. Olin Corp.,* 465 F.Supp. 1120, 1135–36 (W.D.N.Y.1979).

■ As indicated above, grand jury proceedings "ought not to be viewed as a fertile ground to be combed for evidentiary or other error." *United States v. Bari,* 750 F.2d 1169, 1176 (2d Cir.1984). Defendant has not made the requisite showing to establish that discovery into the grand jury proceedings here is proper, and his additional requests in this regard are denied.

C. Redaction and Amendment of the Indictment.

Defendant moves, under Fed.R.Crim.P. 7(d), to strike much of the language of the Indictment as "prejudicial surplusage." An indictment may properly include any allegation that is "relevant to the case and will constitute part of the government's proof at trial." *United States v. Esposito,* 423 F.Supp. 908, 911 (S.D.N.Y.1976). Thus, "if evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language, it may not be stricken." *United States v. Chas. Pfizer & Co.,* 217 F.Supp. 199, 201 (S.D.N.Y. 1963), *rev'd on other grounds,* 426 F.2d 32 (2d Cir.1970). A motion to strike under Fed.R.Crim.P. 7(d) "will be granted only where it is clear that the allegation complained of is not relevant to the charge contained in the indictment and is inflammatory and prejudicial." *United States v. Klein,* 124 F.Supp. 476, 480 (S.D.N.Y.1954), *aff'd,* 247 F.2d 908 (2d Cir.1957), *cert. denied,* 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). Defendant essentially agrees with these standards, but argues that their factual application to this case requires that the Indictment be substantially redact-

what happened in the grand jury." Defendant's Reply Memorandum at p. 5. Defendant's argument is, in this regard, inapposite. Application of mandated prejudice standards is a recurrent element of criminal law and does not, of course, completely shield prior proceedings from review.

**6.** *See, e.g., De Vincent v. United States,* 602 F.2d 1006 (1st Cir.1979) (remand to determine validi-

ty of challenges to grand jury voting procedure). After remand in *De Vincent,* the district court's second dismissal was upheld, and the court was not required to allow the defendant "broad scale discovery in hopes of establishing his claim." *De Vincent v. United States,* 632 F.2d 145, 146 (1st Cir.1980), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 618, 66 L.Ed.2d 501 (1980).

ed. The Court disagrees. *See, United States v. Langella*, 776 F.2d 1078, 1081 (2d Cir.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986).

■ Paragraphs one through eight of the Indictment are not inflammatory or prejudicial, nor do they set forth uncharged crimes. The language defendant objects to factually describes the relationship of the defendant to the non-profit Alliance for Progress, Maxiste Brito, and the Yankee Mall supermarket project that was the subject of the allegedly fraudulent loan applications. Those relationships are relevant to defendant's interest in the supermarket property, and the government will attempt to establish the allegations in all of those paragraphs with respect to the charge in Count One.

The thrust of defendant's arguments regarding the allegedly prejudicial surplusage is that the government is, in fact, relying on an implicit conspiracy theory. There are a series of events here that are factually intertwined with the supermarket project,[7] but no specific scheme or RICO violation is charged. The enumeration of the factual elements in the preambles to the bank fraud counts here do not amount to an uncharged conspiracy.[8]

Defendant makes the same general objections to the preamble Indictment paragraphs with regard to Count Two, in that Count Two incorporates those paragraphs by reference. Count Two, however, additionally incorporates paragraph nine, the actual allegation in the Count One offense. The financial document at issue in Count Two makes reference to the same asset as that in Count One, and ascribes a different value to it.

■ While the factual allegations of paragraph nine are relevant to the charge in Count Two, the *charging* language of that passage is not properly incorporated. In incorporating the charge of Count One

into Count Two, the second count of the present Indictment charges two separate crimes. In other words, if the jury found defendant guilty in Count One, it could not acquit him in Count Two, even if it found that second set of loan representations were not false. Accordingly, paragraph ten of the Indictment will be amended to reads as follows: "10. The factual assertions of Paragraphs One through Nine of Count One of this Indictment are repeated and realleged as though fully set forth herein."

■ Defendant additionally moves to strike paragraphs twelve through thirteen of the Indictment, which relate to Count Three, the perjury charge. Paragraph twelve incorporates the first four paragraphs of the Indictment. Defendant concedes that paragraphs thirteen through fifteen are relevant, but argues that they do not make sense apart from the incorporated language, and must therefore also be stricken.

The incorporation and preamble paragraphs to Count three are neither impermissibly prejudicial, nor irrelevant. *United States v. DePalma*, 461 F.Supp. 778, 797 (S.D.N.Y.1978) ("The language of the Indictment cannot be more prejudicial than the evidence offered to sustain it. . . . If the allegation is of matters by which the Government hopes to establish the charge, then such allegations can scarcely be called 'surplusage.' "). The language that defendant objects to states the factual background of the perjury charge, including the very substance of the perjury count. The government will seek to prove every allegation in Count Three. Those allegations are relevant to the perjury charge, not inflammatory, and will not be stricken. *United States v. Langella*, 776 F.2d at 1081.

■ Finally, defendant makes a request for a simple amendment to paragraph 17 of

---

**7.** *See,* discussion of the severance motion, Part III infra.

**8.** It is conceivable that the government's emphasis on an uncharged conspiracy or enterprise at trial might create impermissible prejudice. *See, e.g., United States v. Dickens*, 775 F.2d 1056 (9th

Cir.1985) (reversal of drug convictions due to government's improper cross-examination of defendant about "mob" connections). The language of the present Indictment, however, does not create that impermissible uncharged crime.

the indictment. That paragraph currently reads as follows:

> 17. At the times hereinafter set forth, the Grand Jury was conducting an investigation into violations of federal laws accomplished by fraudulent representations regarding the legality of payments of consulting fees made to the defendant ISRAEL RUIZ, JR., who was then a State Senator of the State of New York.

The consulting fee arrangements being investigated were, concededly, determined to not be illegal. Defendant seeks to add the word "possible" before "violations of federal laws ...," to avoid the perception that an uncharged crime was committed.

Defendant asserts that this Court has authority to amend the indictment as proposed, so long as substantive rights of the defendant are not affected. This is a rule admittedly invoked primarily by prosecutors. *See, e.g., United States v. Kegler*, 724 F.2d 190, 193–94 (D.C.Cir.1984). Alternatively, the power of this Court to amend an indictment to strike unduly prejudicial language or references to uncharged crimes might be invoked. *E.g., United States v. Hubbard*, 474 F.Supp. 64, 82 (D.D.C.1979); *United States v. Bally Manufacturing Corp.*, 345 F.Supp. 410 (E.D. La.1972) (replacing the term "racketeering" with "unlawful" in RICO prosecutions).

The Court agrees that the amendment requested by defendant is minor and innocuous, and does not substantively alter the Indictment. While a Court should not undertake the comprehensive re-writing of grand jury indictments, the potential prejudice and confusion here warrants the simple amendment requested. Paragraph 17 will therefore be amended to read as follows:

> 17. At the times hereinafter set forth, the Grand Jury was conducting an investigation into possible violations of federal laws accomplished by fraudulent representations regarding the legality of payments of consulting fees made to the defendant ISRAEL RUIZ, JR, who was then a State Senator of the State of New York.

### III. Severance.

The present indictment consists of three counts. The first count charges defendant Ruiz with making a false representation and a material omission in a loan application dated October 30, 1984. Specifically, defendant is alleged to have falsely represented that he owned a supermarket, valued at $125,000. The supermarket was located in a mall ("Yankee Mall") that was being developed by a non-profit corporation holding company ("800 River Avenue Holding Corp."). At all relevant times 800 River Avenue Holding Corp. was a wholly owned subsidiary of another non-profit corporation ("Alliance for Progress, Inc.," or "Alliance") that defendant chaired. The alleged material omission was that defendant failed to state certain personal indebtedness to one Burton Schoenbach.

Count Two charges a similar misrepresentation (except the stated value of the supermarket was $139,000) and material omission, as well as an additional false representation concerning debts to Ruiz, that were made in a loan application on April 17, 1985. The statements and omissions of Counts One and Two are said to violate 18 U.S.C. §§ 1014 and 2.

Count Three charges the defendant with perjury before the grand jury. Defendant allegedly received consulting fees in connection with the non-profit development project noted above, and asserted that such fees were ethically proper. In the course of the grand jury's investigation of those payments and statements, the defendant allegedly perjured himself by testifying falsely regarding his possession of a material document. The perjury is said to violate 18 U.S.C. § 1623.

Rule 8(a) permits joinder of offenses against a defendant in three circumstances; when the offenses "are (1) 'based on the same act or transaction,' or (2) based 'on two or more acts or transactions connected together or constituting parts of the same act or transaction,' or (3) 'of the same or similar character.'" *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988) (quoting Fed.R.Crim.P. 8(a)). Joinder of

offenses against a single defendant inevitably involves "some danger of prejudice," *id.* at 1043, (citing *United States v. Werner,* 620 F.2d at 929 (2d Cir.1980) (Friendly, J.)), but Congress has authorized proper consolidation nonetheless. *Turoff,* 853 F.2d at 1043. The Rule "provides a liberal standard for joinder" because "[m]ultiple trials are unfair to both the government and the accused." *United States v. McGrath,* 558 F.2d 1102, 1106 (2d Cir.1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978).

■ There is, of course, nothing inherent about the joinder of perjury and substantive crimes in a single indictment that is improper. If the perjury charged in Count Three had occurred in the grand jury's specific investigation of the alleged bank frauds that form the basis of Counts One and Two, the joinder of the perjury count would *clearly* be proper. Alternatively, joinder would unquestionably be proper if the charges in Counts One and Two arose from the consulting fees received by the defendant, or his illegal misrepresentations about those fees.

Although perhaps not as clear as these posited situations, joinder of the counts in the present case under Rule 8 is proper. This is revealed by examination of the actual relation between the perjury and the other counts. *See, e.g., United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir.1984) ("The law in this circuit clearly supports the joinder of underlying substantive crimes with perjury counts where, as here, the false declarations concern the substantive offense.") In *Potamitis,* the defendant was convicted of perjuring himself through false statements to a grand jury about his role in an elaborate bank robbery, of which he was also convicted. *See also, United States v. Carson,* 464 F.2d 424, 436 (2d Cir.) *cert. denied* 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972); *United States v. Sweig,* 441 F.2d 114, 118–19 (2d Cir.) *cert. denied,* 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971).

Defendant seeks to distinguish these cases, and to rely on *United States v. Halper,* 590 F.2d 422 (2d Cir.1978). In *Halper* the government sought to join two indictments involving a Medicaid fraud charge and an income tax evasion charge, under Fed.R.Civ.P. 13. It was conceded that the two crimes were not the "same act or transaction;" the unreported income had nothing to do with the alleged Medicaid fraud. The government attempted to argue that the alleged crimes were "connected," but the Second Circuit disagreed. *Id.* at 429 ("In other words, no 'connection' was shown sufficient to warrant the joinder of the indictments.")

The *Halper* Court also rejected the claim that dishonesty to government agencies, as the "gravamen" of the two crimes, was sufficient to join the indictments under the "same or similar character" prong of Rule 8(a). *Id.* at 430.

If, as defendant claims, an abstract notion of "dishonesty" was the only connection between the bank fraud and perjury counts here, the Court would agree that joinder under Rule 8(a) would not have been proper. *See,* Defendant's Reply Memorandum of Law, at p. 17–18. An examination of the counts in the indictment, however, reveals that they are not so tenuously connected as to render joinder improper. The alleged false statements in all of the Counts relate to Ruiz' specific and general scheme to engage in money-making ventures involving the Yankee Mall project, and to conceal the ethical impropriety of his conduct.

Courts consistently uphold joinder of offenses under Rule 8 when some connection exists between the acts underlying the offenses. *E.g., United States v. Golomb,* 754 F.2d 86, 88 (2d Cir.1985) (mail fraud offenses properly joined with stolen property offenses, even though based upon separate conduct, because conduct bore relationship to overall plan); *United States v. Gordon,* 655 F.2d 478, 484–85 (2d Cir.1981) (joinder of stolen property, mail fraud, and false loan application offenses proper because acts underlying offenses were intertwined and connected).

■ The bank frauds of Counts One and Two concern alleged misrepresentations which related to defendant's efforts

to secure a loan to complete the Yankee Mall supermarket project. Part of the profits that Ruiz hoped to enjoy from that project would stem from a consulting agreement that Ruiz executed with the Alliance for Progress, the project's sponsoring organization. Count Three arose from a grand jury investigation into the defendant's possible misuse of his position, and related statements, with respect to that same development project.[9] Defendant's allegedly perjurious statements to the grand jury, therefore, concerned the defendant's scheme to maximize his personal gain from the Yankee Mall supermarket project, as well as to cover any improprieties that scheme might involve.

*United States v. Werner*, 620 F.2d 922, 926–27 (2d Cir.1980) (Friendly, J.) is generally instructive here. In *Werner*, the Second Circuit emphatically re-affirmed the "same or similar character" prong of Rule 8(a), notwithstanding criticism by commentators, or any inference to the contrary that might be drawn from *Halper*, 590 F.2d 422. *Werner* at 927. The Court also cited *United States v. Rabbitt*, 583 F.2d 1014 (8th Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979) in support of its holding that joinder was proper. The state legislator defendant in *Rabbitt* was charged with three unrelated bribery-type offenses, but joinder was held proper in that all three offenses "originate[d] from Rabbitt's scheme to obtain money because of his power, authority and influence as a legislator." *Rabbitt*, 583 F.2d at 1021.

The grand jury here investigated Ruiz' activities and possible misstatements, relating to the development project, made in obtaining loans and consulting fees. During the course of those investigations, Ruiz allegedly perjured himself. The relation of the alleged perjury to Ruiz' scheme to profit from the Yankee Mall development project, as well as its similarity to the misstatements of the first two counts, are sufficient to properly bring the charges within the joinder provisions of Rule 8.

Here, as in *Potamitis*, 739 F.2d at 791, the joinder of the perjury counts with the substantive crimes was proper. Defendant's motion to sever the counts is therefore denied.

### CONCLUSION

Defendant's motions for additional pretrial discovery are denied. The request for a bill of particulars is denied. The motions to dismiss the Indictment, and to conduct discovery into the grand jury proceedings, are denied. The motions for redaction of the Indictment are denied, except that paragraphs 10 and 17 are amended as indicated above. Finally, defendant's motion to sever Counts One and Two from Count Three is denied.

SO ORDERED.

9. The government asserts that proof at trial will establish that the defendant's ties to the Alliance for Progress were directly material to the bank fraud counts. The Alliance for Progress allegedly had a history of financial dealings with the subject bank, and that relationship had an effect upon the fraudulent loan applications.