**UNITED STATES of America**

v.

**Ian Orville AIKEN, et. al.**

**No. 97–233–CR.**

United States District Court,
S.D. Florida.

Oct. 1, 1999.

Allyson Fritz, John S. Kastrenakas, Richard Getchell, Asst. U.S. Attys., for United States.

Alvin Entin, Ft. Lauderdale, FL, for Donovan Sibbley.

Jane Moscowitz, H. Dohn Williams, Miami, FL, for Ian Orville Aiken.

William D. Matthewman, Boca Raton, FL, for Roland David Aiken.

Eric Cohen, Miami, FL, for Daniel Patrick Aiken.

Kirk A. Barrow, Lauderdale Lakes, FL, for Eric Livingston Morris.

## ORDER ON DEFENDANTS' DISCOVERY MOTIONS

GOLD, District Judge.

### A. BACKGROUND.

Defendants, Roland David Aiken, Daniel Patrick Aiken and Ian Orville Aiken have moved to reconsider the prior discovery order[1] of the Honorable Judge Lenore C. Nesbitt entitled "Order Granting Government's Sealed, Ex Parte, In–Camera Motion to Delay Compliance with Paragraphs 'D' and 'E' of the Standing Discovery Order" dated June 19, 1997, filed July 2, 1997.[2] This order was entered in conjunction with the original indictment filed in this cause against Donovan Sibbley and Barrington Fagan which alleged certain car jacking and gun counts. Since then, a nine count superseding indictment has been filed against Ian Orville Aiken, Roland Aiken, Daniel Patrick Aiken, and oth-

1. The order delayed compliance until the jury was sworn in the cause.

2. Paragraph D of the Standing Discovery Order requires the Government to disclose to the defendant(s) the existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses, within the scope of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (*"Giglio"*) and *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (*"Napue"*). Paragraph E requires the Government to supply the defendant(s) with a record of prior convictions of any alleged informant who will testify for the government at trial.

ers, alleging a racketeering conspiracy, conspiracy to murder in aid of racketeering, and other crimes. As such, all but one defendant were initially "death eligible." Thereafter, Defendant Roland Aiken filed an Omnibus Motion for Discovery and Disclosure of Guilt and Penalty Phase Materials which was joined in by all Defendants, including Ian Orville Aiken. This 77 page motion included 48 specific requests.[3] The essential purpose of the motion, at that time, was to obtain mitigating information so as to convince the Department of Justice not to certify the death penalty as against the charged defendants. Subsequently, the Department of Justice, through its designated committee, recommended to the United States Attorney General that only Ian Aiken should be certified as death eligible. As a result, this court had limited its review of pending motions to only Ian Aiken who also had filed his own motion for discovery on March 1, 1999 [D.E. # 288].

By order filed March 8, 1999, the court sustained the government's objections and denied Ian Aiken's Amended Motion for Discovery [D.E. # 298]; however, the court reserved on post-certification pretrial discovery if the Attorney General certified Ian Orville Aiken for the death penalty.[4] Subsequently, the United States Attorney General authorized the United States Attorneys Office in this district to seek the death penalty against Defendant Ian Aiken. Trial in this case is now specially set for February 14, 2000.[5]

3. The requests were for: (1) statements of defendants; (2) defendant's prior criminal record; (3) inventory of items intended to be offered as evidence in the guilt phase; (4) inventory of items intended to be offered as evidence in the penalty phase; (5) inventory of items not intended to be offered as evidence; (6) test results material to the guilt or penalty phase; (7) expert witnesses; (8) searches; (9) identity and statements of co-conspirators; (10) witness information; (11) potential witnesses as to the guilt phase; (12) law enforcement personnel; (13) potential witnesses as to penalty phase; (14) court/detention personnel; (15) witness role; (16) informants; (17) arrest and conviction records; (18) updated police reports; (19) written statements; (20) Federal Rule of Evidence 801(d)(2)(E) statements; (21) grand jury witnesses and testimony; (22) grand jury proceedings; (23) exculpatory materials as to guilt phase; (24) exculpatory evidence as the DOJ Death Authorization process [**now moot**]; (24) Rule 404(b) evidence in the guilt phase; (27) theory of admissibility of Rule 404(b) evidence in the guilt phase; (28) Rule 404(b) evidence in the penalty phase; (29) Rule 608(b) evidence; (30) prior under cover operations; (31) identifications and procedures employed; (31) mail searches; (33) telephone records; (34) Rule 801(d)(2) and 806 statements; (35) demonstrate evidence; (36) booking documents; (37) financing documents; (38) Jencks/Rule 26.2 materials; (39) wiretap information; (40) documents reflecting on indictment; (41) prosecution memoranda; (42) evidence arguably subject to Motion to Suppress; (43) surveillance; (44) destroyed materials; (45) live witness interviews; (47)(sic) other information; (48) Local Rule 88.9.

4. The Government has stated that portions of items requested in the Omnibus motion, Paragraphs 1, 2, 6, 17, 26, 27, 28, 31, 36, 39 and 42 have been addressed in the materials which have already been provided. [Government's Response to the Defendants' Motions Requesting Extra–Ordinary discovery before the Government Decides whether to Seek the Death Penalty Against Them, page one, footnote one] [D.E. # 282]. The Government also has responded to Defendant Ian Aiken's motion regarding discovery. [D.E. # 267]. However, since Ian Aiken's death certification, the Government has not more fully addressed each aspect of the Omnibus Motion, or Ian Aiken's further motion for discovery, as it applies to Ian Aiken's guilt and penalty phase, although the Government has continued to provide supplemental discovery. In the court's view, a more specific response is required to each request, as set forth in this Order.

5. The original indictment was filed March 26, 1997 against Donovan Sibbley and Barrington Fagan alleging a car jacking conspiracy and two gun counts. [D.E. # 3]. Standard discovery orders were issued March 29, 1999 [D.E. # 10] and April 4, 1997 [D.E. # 20]. A superseding indictment was filed on April 9, 1997 adding Roland Aiken to the car jacking conspiracy and adding another gun count. A standard discovery order was issued May 29, 1997 as to Roland Aiken [D.E. # 45]. The Government responded to the discovery order on June 3, 1997 [D.E. # 46]. As to Paragraphs D and E of the Discovery Order, the Government stated that it "... is filing an *ex parte* motion for a protective order concern-

At the time the Judge Nesbitt entered the June 19, 1997 order, this case was basically a car jacking case against only two defendants. Now, all Defendants claim that the prior order was predicated upon an *ex parte* pleading which is based on "stale" facts. The Defendants claim that there is no justifiable basis upon which the Government can continue to withhold the discovery in the case. Further, the Defendants request an evidentiary hearing on the Government's withholding of requested discovery, or, alternatively, a complete record of what discovery has been withheld for purposes of future appellate review. In response, the Government has set forth reasons in its responsive memorandum why its request is still necessary to protect certain of its witnesses, but has not provided any updated affidavits, which, pursuant to F.R.C.P. 16(d)(1), would constitute part of the record on appeal and be pertinent to the latest superseding indictment.

◼ F.R.C.P. 16(d)(1) permits this court to deny, restrict, or defer pre-trial discovery upon a sufficient showing by a party of the need for such action. Such a showing may be in the form of a written statement to be inspected by the judge alone. If the court enters an order granting relief following such an *ex parte* showing, the "entire text of the party's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal." *Id.*

Here, the Defendants request an "evidentiary hearing" to justify the Government's protective order. The Defendants have not articulated any compelling need for disclosure other than the general need to prepare for cross-examination. No case law or rule is cited in support of the Defendant's position. Rather, their request

ing material within the scope of this paragraph." Thereafter, Roland Aiken filed a number of pretrial motions. By Order filed September 4, 1997, the Magistrate Judge denied these motions, except to the extent the information was required to be disclosed pursuant to the Standing Discovery Order [D.E. # 81]. The Magistrate Judge did require that all Rule 404(b) evidence be disclosed to the defendant 10 days prior to trial. *Id.*

On January 28, 1998, Defendant Donovan Sibbley requested disclosure of *Kyles* and *Brady* Information pertinent to each cooperating witness [D.E. # 97]. Also on January 28, 1998, Defendant Donovan Sibbley sought reconsideration of the Court's order granting the Government's Sealed *Ex Parte* Motion to Delay compliance with Paragraphs D and E of the Standing Discovery Order until after a Jury has been Sworn [D.E. # 99]. By order dated February 25, 1998, the Magistrate Judge granted Defendant Sibbley's Request for Specific *Kyles* and *Brady* Information, to the extent provided in the Standing Discovery Order previously entered [D.E. # 107].

On July 1, 1998, the subject nine count Superseding Indictment was filed against Ian Orville Aiken, Roland Aiken, Oliver Horatio Lyons, Daniel Patrick Aiken, Donovan Sibbley and Eric Livingston Morris alleging a Racketeering Conspiracy; conspiracy to murder in aid of racketeering, murder of Derrick Christian in aid of racketeering, conspiracy to commit murder in aid or racketeering, murder of Desmond LaTouche in aid of racketeering, firearms possession, assault with a dangerous weapon in aid of racketeering, car jacking of Robert Williams. Standing Discovery Orders were then issued. On August 26, 1998, the Government filed its first supplemental response. In Paragraph "D," the government stated that it was aware of payments, promises of immunity, leniency, or preferential treatment, made to prospective government witnesses, within the scope of *Giglio* or *Napue*. It stated: "Those disclosures will be made in accordance with the previous Order of District Judge Lenore Nesbitt, dated June 19, 1997." In Paragraph "E," the government stated that it was aware of prior convictions of alleged co-conspirators, accomplices and informants who will testify for the government at trial. It stated: "Those disclosures will be made in accordance with the previous Order of District Judge Lenore C. Nesbitt dated June 19, 1997" [D.E. # 202].

On February 4, 1999, Defendant Ian Orville Aiken, requested modification of Judge Nesbitt's prior order on discovery to allow greater access to materials to address the Death Penalty Committee then scheduled for February 8, 1999. Also, on February 4, 1999, Defendant Roland Aiken filed an Omnibus Motion for Discovery and Disclosure of Guilt and Penalty Phase Materials which was joined in by all other Defendants [D.E. # 266]. These motions were addressed by the court's order of March 25, 1999.

for evidentiary hearing is directly inconsistent with the applicable rule especially where the court, after *in camera* inspection, determines that relief should be granted.

Based on what has been submitted to date, the court preliminarily concludes that reconsideration of Judge Nesbitt's prior order is neither necessary nor required, except as further addressed in this Order. A final determination will be made once the Government completes its submission in a form sufficient for further review which will be sealed as provided in F.R.C.P. 16(d)(1).

### B. APPLICABLE LAW.

█ Where the government has reason to believe that the defendant may make improper attempts to influence a government witness before trial, it can seek a Rule 16(d)(1) protective order. *See United States v. Cannone*, 528 F.2d 296 (2d Cir.1975) (where the government advised the district court that two of the defendants had previously been indicted for obstruction of justice for beating up grand jury witnesses). *See also United States v. Harris*, 542 F.2d 1283 (7th Cir. 1976).

Here the Government has reason to believe that attempts to influence or retaliate against government witnesses is a real danger. Judge Nesbit agreed upon the initial showing and this court further concurs after reviewing the Government's responsive memorandum. Even if the defendants themselves cannot directly retaliate, the government has initially sustained its burden by showing that other members of their organization may attempt to retaliate or endanger cooperating witnesses. Given these circumstances, the request for recon-

sideration should be denied as to the non-death eligible defendants.

█ Further consideration must be given as to whether Defendant Ian Aiken is subject to a different standard or rule due to his death eligibility status. Upon review, the court concludes he is not as to the items set forth in Paragraphs "D" and "E" of the June 19, 1997 Order, except as is required under 18 U.S.C. § 3432 (requiring the disclosure of names and addresses of the government's witnesses three days before trial[6], unless the court finds, at some future date by the preponderance of the evidence, that providing a witness list would jeopardize the life or safety of any person). At this point the Government has not sought to obtain a "waiver" of the three day rule. Any such future showing must be by "preponderance of evidence" which suggests an evidentiary hearing.

█ As the Supreme Court observed in *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), "[t]here is no general constitutional right to discovery in a criminal case and Brady did not create one...." Rather, discovery is governed by F.R.C.P. 16 and this court's Standing Discovery Order. Under these rules, there is no authority requiring the Government to supply witness lists or witness statements until that witness has testified on direct examination, unless such information is required sooner by *Brady* or *Giglio*. See Jencks Act, 18 U.S.C. § 3500(a); *Weatherford*, 429 U.S. at 559, 97 S.Ct. 837. *Giglio* material falls under the umbrella of the *Brady* rule because impeachment material directly affects the credibility of a witness and the "reliability of a given witness may well be determina-

---

6. With respect to the provision of a complete witness list, 18 U.S.C. Section 3432 ("Section 3432") states in pertinent part that a defendant in a capital case must be furnished "three entire days before commencement of trial" with a "list of each witness," unless "the court finds by a preponderance of the evidence that providing the list may jeopard-

ize the life or safety of any person." 19 U.S.C. Section 3432 (1997). Thus, with respect to those witnesses for whom the Government establishes a basis for concern regarding their safety, the statute allows for disclosure of their identity even later than three days before trial.

tive of guilt or innocence." *Giglio,* 405 U.S. at 154, 92 S.Ct. 763.

█ The issue of when *Giglio* material should be disclosed, however, must be analyzed separately. Provided that the defendant has sufficient time after receipt of *Giglio* material to use it effectively at trial, there is no violation of the defendant's rights from deferring production of this material until closer to the time of the witnesses' testimony. Neither *Giglio,* nor *Napue,* has stated when such disclosures should be made. The Fifth Circuit, in *Williams v. Dutton,* 400 F.2d 797, 800 (5th Cir.1968), *cert. denied,* 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (1969), merely required the government to disclose at the "appropriate time" without saying what the appropriate time may be for disclosure of *Giglio/Napue* material. It has held, however, that no error exists where all promises to government witnesses are disclosed at trial, even if such disclosure has been ordered to occur considerably earlier. *United States v. Poitier,* 623 F.2d 1017 (5th Cir.1980).

Similarly, in *United States v. Burroughs,* 830 F.2d 1574 (11th Cir.1987), the Eleventh Circuit affirmed a conviction where the government failed to provide *Giglio* and/or *Brady* material prior to trial. The *Giglio* material came out during the government's direct examination of a major government witness. The government had not disclosed immunity given to the witness' wife in a separate investigation. The Eleventh Circuit upheld the conviction and stated the requirements of *Giglio* had been fulfilled because the jury had learned of the motivation behind the witness' testimony.

As a consequence, in cases not involving the death penalty, courts have approved disclosure of *Giglio* material on the day that a witness testifies. *See, e.g., United States v. Higgs,* 713 F.2d 39, 44 (3d Cir. 1983); *United States v. Aguirre–Parra,* 763 F.Supp. 1208, 1216 (S.D.N.Y.1991) (to be produced with 3500 material); *United*

*States v. Ruiz,* 702 F.Supp. 1066, 1069–70 (S.D.N.Y.1989), *aff'd,* 894 F.2d 501 (2d Cir. 1990) (approving Government agreement to provide impeachment material along with 3500 [7] material on day before witness testifies); *United States v. Biaggi,* 675 F.Supp. 811 (S.D.N.Y.1897).

In cases involving the death penalty, Title 18 U.S.C. § 3432 requires that the United States provide to the defendant the names and place of abode to its witnesses at least three days prior to trial. Depending on applicable circumstances, those courts applying 18 U.S.C. § 3432 have concluded differently as to the number of days preceding *trial by which the names and addresses should be given. United States v. Chandler,* 996 F.2d 1073, 1098 (11th Cir.), *reh'g en banc denied,* 5 F.3d 1501 (11th Cir.1993) (two weeks and 4 days was more than sufficient); *United States v. Storey,* 956 F.Supp. 934, 938–39 (D.Kan. 1997) (3500 material provided seven days before trial); *United States v. Nguyen,* 928 F.Supp. 1525, 1551 (D.Kan.1996) (denying defendant's motion for disclosure of witness list earlier than required by Section 3432); *United States v. Willis,* 33 F.R.D. 510 (S.D.N.Y.1963) (30 days before trial). One court has ruled that production of *Giglio* material three business days before jury selection gave the defendant "ample" opportunity to prepare for cross-examination. *United States v. Beckford,* 962 F.Supp. 780, 788 (E.D.Va.1997). But see *United States v. McVeigh,* 923 F.Supp. 1310, 1315 (D.Col.1996) (ruling, after finding that Giglio material was required to be disclosed on same schedule as other Brady material, that all exculpatory or impeaching witness statements be immediately produced).

█ The court concludes that production of pure impeachment material under *Giglio/Napue* (records of conviction, plea agreements, immunity agreements and the like) shall be produced not less than 10 business days in advance of trial, unless

---

**7.** 18 U.S.C. Section 3500, known as the Jencks Act, prohibits a court from ordering disclosure of a government witness's prior statements before the witness testifies.

the Government requests, and makes a further showing to defer under 18 U.S.C. Section 3432. Production at that time will provide the Defendant Ian Aiken with ample opportunity for review and effective use of the impeaching evidence required to be produced by *Giglio*. That determination is based on the fact that while *Giglio* material may have considerable impeachment value, the nature of that material usually does not require substantial advance time to prepare for its effective use at trial. See *United States v. Beckford, supra,* 962 F.Supp. at 787 (citations omitted). However, any *Brady* evidence which is both exculpatory **and** impeaching falls outside the purview of the court's previous order and shall be produced in accordance with *Brady. Id.* at 789.[8]

**WHEREFORE,** it is **ORDERED:**

1. The Defendants' motions for reconsideration of Judge Nesbit's Order of June 19, 1997 are denied with the following exceptions: (1) the *Order* is **amended** as to Defendant Ian Aiken to require, consistent with 18 U.S.C. Section 3432, that compliance with Paragraphs "D" and "E" occur not less than 10 business days prior to commencement of trial; and (2) that, as to all the Defendants, any *Brady* evidence which is both exculpatory and impeaching shall be excluded from the limitation of the June 19th Order.

2. Within 20 days from the date of this Order, the Government shall file with the court under seal affidavits substantiating its protective order request, in light of the current superseding indictment, which shall be preserved in the court records and made available for further review on appeal.

3. The Defendants' request for an evidentiary hearing is **denied** as being in conflict with F.R.C.P. 16(d)(1); provided, however, that the request that the *ex parte* materials shall be separately preserved for appellate purposes is **granted.**

4. Within 20 days from the date of this Order Government shall more specifically respond to the Omnibus Motion [D.E. # 266] as adopted by Defendant Ian Aiken, and to Defendant Ian Aiken's subsequent discovery motion [D.E. # 288] as to both the guilt and penalty phases of the trial. Such response shall include, as to the guilt and penalty phase: (1) whether the request has been met to date through discovery already provided, and a reference to such discovery; (2) whether the request is objected to on legal grounds, and, if so, a statement of grounds and legal authorities; where possible, the authorities should be specific to death certified defendants; (3) whether the Government contemplates early disclosure of Jencks material, and, if so, the date of such disclosure;[9] (4) if discovery has not been provided, when it will be provided, and (5) whether an *in camera* inspection is requested.

---

8. As one court recently summarized:

> Brady material consists primarily of two types of evidence: (1) exculpatory evidence, which goes to the heart of the defendant's guilt or innocence; and (2) impeachment evidence, which may affect the jury's assessment of the credibility of a prosecution witness. Of course, Brady material may encompass both exculpatory and impeachment evidence. Indeed, there is no "artificial bright-line between impeachment and exculpatory evidence." As discussed above, however, disclosure of all Brady material, including Giglio impeachment material, is governed by the same legal principle: evidence favorable to a defendant must be disclosed "in time for its effective use at trial." The determination of the precise time at which Brady material must be disclosed is necessarily governed by the specific nature of the Brady material at issue—i.e., whether it is exculpatory or merely impeachment evidence. *United States v. Beckford,* 962 F.Supp. 780, 787–88 (E.D.Va. 1997) (emphasis in original) (citations and footnote omitted). Impeachment evidence normally does not require counsel to be given substantial time in advance to review. *Id.* at 788. On the other hand, exculpatory evidence may require additional investigation and research to establish the innocence of an accused.

9. The court reserves to consider an early date, if one is not agreed to by the Government, in order to avoid significant trial delays.

5. Within 10 days after the receipt of the Government's response, Defendant Ian Aiken shall file any additional discovery requests pertaining to the guilt or penalty phase.