**UNITED STATES of America, Appellee,**

v.

**Louis WERNER, Appellant.**

**No. 315, Docket 79–1252.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 25, 1979.

Decided Feb. 28, 1980.

Edward Agnew McDonald, Asst. Atty.-in-Charge, U. S. Dept. of Justice, Organized Crime Strike Force, E. D. N. Y., Brooklyn, N. Y., (Edward R. Korman, U. S. Atty., E. D. N. Y. and Thomas P. Puccio, Atty.-in-Charge, U. S. Dept. of Justice, Organized Crime Strike Force, E. D. N. Y., Brooklyn, N. Y., of counsel), for appellee.

Stephen R. Laifer, New York City, for appellant.

Before FRIENDLY, OAKES and NEW-MAN, Circuit Judges.

FRIENDLY, Circuit Judge:

In an indictment dated March 2, 1979, in the District Court for the Eastern District of New York, appellant Louis Werner was charged with four counts relating to the six million dollar robbery on December 11, 1978 of currency and other valuables from the Lufthansa cargo area at John F. Kennedy Airport in that district. The first two counts charged substantive violation of and conspiracy to violate the Hobbs Act, 18 U.S.C. § 1951; the third and fourth counts charged theft and possession of goods stolen from a foreign shipment in violation of 18 U.S.C. § 659. A superseding indictment, filed five weeks later on April 6, 1979, added two more counts relating to the theft of $22,000 in foreign currency from the same Lufthansa cargo area on October 8, 1976. Count five in the superseding indictment charged theft of the currency and count six charged unlawful possession, both in violation of 18 U.S.C. § 659. Werner stood trial on this indictment before Judge Costantino and a jury in the United States District Court for the Eastern District of New York, and was convicted of the violations charged in counts one, two, and five.[1] The judge sentenced him to two concurrent fifteen year prison terms for the Hobbs Act violations arising out of the 1978 robbery of $6,000,000 and a concurrent five year term for the 1976 violation of 18 U.S.C. § 659 arising out of the 1976 theft of $22,000, and also assessed a fine of $10,000 for each Hobbs Act count and a fine of $5,000 for the violation of 18 U.S.C. § 659. Werner appeals, alleging that joinder of the first four counts with the last two was improper under F.R.Cr.P. 8(a),[2] and that the trial judge erred in denying his motion for a severance under F.R.Cr.P. 14.[3]

Since the particular facts assume critical importance in the disposition of this appeal, we must recount them in some detail. The story begins on October 8, 1976, when a shipment of $22,000 in various foreign currencies arrived at Kennedy Airport on Lufthansa flight 493. The shipment was locked and sealed in one of the blue "val bags" customarily used by Lufthansa in transporting valuables. Werner, a Lufthansa employee since 1968, was responsible for meeting all incoming Lufthansa flights and immediately removing and securing in the cargo building all shipments, like the currency, appropriately designated "valuable" or "important". Werner did meet flight 493 that night and obtained the flight manifest, which indicated the presence of the valuable shipment, but he did not discharge his responsibility as usual. According to statements Werner made to a Lufthansa security officer,[4] he was suffering from diarrhea at the time and had to leave the plane twice, and also had to assist in the handling of an animal which had arrived on the flight. The val bag was mistakenly picked up by an employee of Serv-Air, the company hired by Lufthansa to unload planes, and taken to the airport post office. When the employee discovered his error, he returned the val bag, at 11:05 P.M., to its

1. Pursuant to our recent decision in *United States v. Di Geronimo*, 598 F.2d 746 (2 Cir.), cert. denied, 444 U.S. 886, 100 S.Ct. 180, 62 L.Ed.2d 117 (1979), and Judge Costantino's instructions, the jury did not reach a verdict on the remaining counts.

2. Rule 8 Joinder of Offenses and of Defendants.
(a) Joinder of Offenses
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

3. Rule 14 Relief from Prejudicial Joinder.
If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

4. Werner did not testify.

shipping container outside the cargo building, where all four cargo containers from the flight were located. Werner admitted that he walked past these containers shortly after, at 11:15 P.M. They were left unattended until midnight, when the midnight crew brought them inside. When Lufthansa freight handlers conducted the usual inventory of flight 493, they discovered that the val bag had been broken into and that the $22,000 in currency was gone.

Information about Werner's activities after October 8 in connection with the heist was provided at trial by Peter Gruenewald and William Fischetti. According to Gruenewald, a friend of Werner's for some eight years, Werner called him shortly after midnight on October 9 and said he had just stolen $22,000 in foreign currency. Werner went to Gruenewald's home, and Gruenewald agreed to hide the money for Werner and exchange it for American dollars if Werner would give him a percentage. A deal was worked out and Werner gave the money to Gruenewald. When Gruenewald had still not exchanged any of the money ten days later, Werner retrieved it from him and gave it to Fischetti, paying Gruenewald $5,000 for his trouble. Fischetti, a friend of Werner's for four years, testified at trial that Werner had approached him about exchanging the money, and that he had agreed to do this for a ten percent fee. Fischetti was not so timid about exchanging the stolen currency as Gruenewald had been, and completed the necessary transactions by the end of 1976. The jury found Werner guilty of violating 18 U.S.C. § 659 (theft of goods from a foreign shipment) by this transaction and Werner does not dispute there was sufficient evidence to support this.

Two years later the largest armed robbery in American history occurred at the same Lufthansa cargo building. Gruenewald and Fischetti again supplied much of the critical testimony permitting the jury to conclude that Werner was the "inside man" behind the robbery. Both testified that Werner had approached them after the successful $22,000 heist about executing a "bigger score". Discussions progressed until at one point Gruenewald contacted a group of friends to provide the manpower to implement Werner's inside knowledge, but the group eventually decided to back out. Werner and Fischetti had independent discussions about a smaller robbery which Werner called off because of his more grandiose plans with Gruenewald. When Gruenewald proved incapable of recruiting a band of robbers, Werner approached Frank Menna, his bookmaker. Menna put Werner in contact with one Martin Krugman who professed interest in the plan.

The chance for the long mooted "big score" came on Friday, December 8, 1978. A Brinks armored truck drove up to the Lufthansa cargo area to pick up $5,000,000 in currency to be delivered to the Chase Manhattan Bank. Werner's responsibilities included assigning pick-up orders, but he did not assign anyone to deliver the requested shipments to the Brinks guards. When the guards demanded their shipments, Werner explained that he would not clear them without the presence of a supervisor or security officer, admittedly a novel procedure. The guards waited a while longer but eventually had to leave, and the $5,000,000 was left to be picked up after the weekend.

Some time around 3:00 A.M. on Monday morning, December 11, six masked gunmen entered the Lufthansa cargo building and surprised eleven Lufthansa employees on their meal break. The gunmen ordered one employee to disengage the alarm system and open the storage room in which the valuable shipments were kept. They then removed forty boxes containing the $5,000,000 and other boxes containing $1,000,000 worth of jewelry, packed the loot into a black van, and sped off into the night.

According to Gruenewald and Fischetti, Werner told them he had pulled off the robbery and expected $300,000 for his role. Gruenewald was promised $65,000 for his silence and an additional $50,000 if he lost his job. Gruenewald eventually received $10,000 from Werner. Werner's gambling debts were paid off shortly after the rob-

bery, and he discussed with Fischetti the possibility of buying into the latter's taxi business.

There was no charge that Werner was one of the gunmen, but the familiarity of the robbers with the cargo area and Lufthansa procedures left little doubt that an inside man had been assisting the robbers. The Government charged that Werner was this man, the jury so found, and Werner does not challenge the sufficiency of the evidence to support this.

### Joinder under Rule 8(a)

■ The question of the propriety of joinder under Rule 8 and of refusal to grant relief from prejudicial joinder under Rule 14 are quite different in nature, although some decisions tend to obscure this. The former is a question of law, subject to full appellate review; if the joinder was not permitted by Rule 8, a conviction must be reversed unless the error was harmless.[5] In contrast, the grant of relief under Rule 14 lies within the discretion of the trial judge and refusal to sever counts or defendants properly joined under Rule 8 will be reversed only if discretion was abused, see the many cases cited *infra*.

■ In seeking to sustain the propriety of joinder of the 1976 and 1978 offenses the Government has chosen to rely solely on the claim that they were "of the same or similar character." Since we deem this ground sufficient, we need not decide whether the case was not also one of "two or more acts or transactions connected together," although we are inclined to think it was. Both crimes involved the theft of valuables from the same place, Lufthansa's cargo warehouse at John F. Kennedy Airport. Both were accomplished by Werner's exploitation of his knowledge of the airline's cargo handling procedures. The success of the first theft stimulated Werner to be on the alert to commit another much larger one. Werner approached his confederates in the first crime to aid him in the second, paid one of them for his silence, and considered investing part of the loot with the other.

■ Werner's principal argument that the two crimes were not "of the same or similar character" is that the 1976 crime did not involve violence whereas the 1978 crime did. However, Werner's role in both was the same—that of the inside master-mind. Moreover, Rule 8(a) is not limited to crimes of the "same" character but also covers those of "similar" character, which means "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." Webster's New International Dictionary (2d ed.). As one court has pointed out, requiring too precise an identity between the character of the offenses "would fail to give effect to the word 'similar' succeeding the word 'same' and thus violate an elementary rule of statutory construction." *Edwards v. Squier*, 178 F.2d 758, 759 (9 Cir. 1949). Cf. *United States v. Weber, supra,* 437 F.2d at 333 (rejecting argument that *malum in se* and *malum*

---

5. See *United States v. Granello*, 365 F.2d 990, 995 (2 Cir. 1966), *cert. denied*, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967); *United States v. Levine*, 546 F.2d 658, 661 (5 Cir. 1977); *United States v. Nettles*, 570 F.2d 547, 551 (5 Cir. 1978). See also *United States v. Halper*, 590 F.2d 422, 430–33 (2 Cir. 1978) (F.R. Cr.P. 13).

One of the sources of confusion between cases involving Rule 8 and those involving Rule 14 is that a frequent basis used by the Government to show that improper joinder under Rule 8 was harmless error is that all or substantially all the evidence admitted at the joint trial would have been admissible in separate trials, see e. g., *United States v. Granello, supra,* 365 F.2d at 995; *United States v. Weiss,* 491 F.2d 460, 462 (2 Cir.), *cert. denied,* 419 U.S. 833, 95

S.Ct. 58, 42 L.Ed.2d 59 (1974); *United States v. Turbide,* 558 F.2d 1053, 1961 (2 Cir.), *cert. denied,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977), and this is also a prime justification for refusing to reverse for denial of discretionary severance under Rule 14, see, e. g., *United States v. Ochs,* 595 F.2d 1247, 1260–61 (2 Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979); *Baker v. United States,* 131 U.S.App.D.C. 7, 23–24, 401 F.2d 958, 974–75 (D.C.Cir.1968), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); *United States v. Weber,* 437 F.2d 327, 332 (3 Cir. 1970), *cert. denied,* 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971). However, this should not be allowed to obscure the essential difference between the two inquiries.

*prohibitum* crimes were improperly joined; "the mere fact that the crimes carry different labels is not determinative"); *United States v. Simon*, 453 F.2d 111 (8 Cir. 1971) (crimes of sale of cocaine and possession of other narcotics properly joined).

The case law amply supports the joinder. In *United States v. Rabbitt*, 583 F.2d 1014 (8 Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979), defendant, a state legislator, was convicted under an indictment charging, in separate counts, acceptance of a payoff to assist automobile dealers in obtaining passage of a favorable bill, an unsuccessful demand for a payoff in the form of legal business for assisting truckers to obtain passage of a favorable bill, and an agreement to help an architectural firm get state contracts. The court found that the three offenses, "although distinct, possess sufficient similarity to render joinder appropriate under Rule 8." *Id.* at 1021. All three offenses "originate from Rabbitt's scheme to obtain money because of his power, authority, and influence as a legislator." *Id.* Here both offenses arose out of Werner's scheme to use his position as an insider with Lufthansa to obtain money or property carried by it to John F. Kennedy Airport. *United States v. Henderson*, 406 F.Supp. 417, 429 (D.Del.1975), indicates that the element of "common scheme" as that phrase is used in Rule 8(a) is not necessary to support joinder where the crimes are similar due to the defendant's use of his particular position. Still other cases have found "a common scheme or plan" on facts similar to those here. See *United States v. Weber, supra*, 437 F.2d at 331; *United States v. Barrett*, 505 F.2d 1091, 1105 (7 Cir. 1974), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975).

Our recent decision in *United States v. Halper, supra*, 590 F.2d 422, is not to the contrary. Apart from somewhat different considerations applicable because *Halper* arose under F.R.Cr.P. 13,[6] rather than F.R. Cr.P. 8(a), the two offenses tried together in *Halper*, Medicaid fraud by false billings by Halper's laboratory and income tax evasion by failing to report eleven New York City checks which Halper had diverted from the laboratory's records, were not "of the same or similar character," since the only similarity was that "both charges involved alleged attempts by Halper to manipulate those whom he had employed in a way that would work to his profit, receiving too much on the one hand and paying too little on the other." *Id.* at 431. While the *Halper* opinion "endorsed" *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (D.C.Cir. 1964), the *Drew* opinion recognized the propriety of joinder under Rule 8 and used the language quoted in *Halper* to support its findings of error in refusing to sever under Rule 14. Even that language approved denial of severance under Rule 14 when, as will be shown below, "the evidence is sufficiently 'simple and distinct' to mitigate the dangers otherwise created by such a joinder," as well as when "evidence of the joined offenses would be mutually admissible in separate trials," see 590 F.2d at 431 (citing *Drew v. United States, supra*, 118 U.S.App.D.C. at 16–18, 331 F.2d at 90–92).

■ It would seem that this should end the discussion so far as concerns Rule 8(a), and that it is immaterial that the "same or similar character" provision has not met with the favor of commentators, see 1 Wright, Federal Practice and Procedure § 143, at 317–18 (1969) ("It may fairly be

6. F.R.Cr.P. 13 reads:

The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.

See *United States v. Halper, supra*, 590 F.2d at 428–29; 1 Wright, Federal Practice and Procedure § 212 at 426 (1969) ("there is a difference between Rule 8(a) and Rule 13. Under Rule 8(a) the grand jury, or the prosecutor, may join as a matter of right offenses related as required by that rule. If this is not done initially, and trial together is sought, it is the court that must act, and the court has discretion to refuse a joint trial though the requirements of Rule 8(a) and 13 are satisfied.") 8 Moore, Federal Practice ¶ 13.03 at 13–6 (Cipes ed. 1978).

asked . . . whether such joinder should ever be allowed."); 8 Moore, Federal Practice 91, 8.02[1], at 8–3 n. 3; 8.05[2] (Cipes ed. 1978) ("such form of joinder is inherently prejudicial, with little balancing advantage in terms of trial convenience"); Note, Joint and Single Trials under Rules 8 and 14 of the Federal Rules of Criminal Procedure, 74 Yale L.J. 553, 560 (1965) (recommending "abolition of joinder of similar offenses under Rule 8"); ABA Standards, Joinder and Severance § 2.2(a)(1968) ("Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have the right to a severance of the offenses."). The Rule is what it is; if commentators do not like it, the road for them to seek amendment is open. In fact, however, this case is a striking example of fulfillment of the important policy behind this branch of Rule 8(a) and other provisions of Rule 8, namely, that of trial convenience and economy of judicial and prosecutorial resources—considerations of particular weight when the Government and the courts have been placed under strict mandate to expedite criminal trials, Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–74, as amended by Pub.Law 96–43, 48 U.S.L.W. 5 (Sept. 11, 1979). See, e. g., *Baker v. United States, supra,* 401 F.2d at 971; *United States v. McGrath,* 558 F.2d 1102, 1106 (2 Cir. 1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978); *United States v. Niederberger,* 580 F.2d 63, 66 (3 Cir.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978); *United States v. Borish,* 452 F.Supp. 518, 526 (E.D.Pa.1978). The facts here show the error in an influential comment that the only time saved by the "same or similar character" provision is "by impanelling only one jury and by setting the defendant's background only once . . ." Note, *supra,* 74 Yale L.J. at 560. If there had been separate trials, Gruenewald and Fischetti would have had to testify and be cross-examined at both. Indeed, as will appear below, see note 7 *infra,* the testimony at the trial for each offense would very likely have included evidence of the other.

### Refusal to Direct Separate Trials under Rule 14

Even though distinct offenses have been properly joined under Rule 8, the court may order separate trials or grant a severance under Rule 14 if it appears that the defendant is prejudiced by the joinder. As we have noted above, in contrast to the full review as a matter of law under Rule 8, the standard for review of refusal to grant relief under Rule 14 is abuse of discretion. In order to prevail, the defendant must show not simply some prejudice but *substantial* prejudice. *United States v. Ochs, supra,* 595 F.2d at 1260 ("We are reluctant to overturn a conviction for denial of a motion for severance unless there is a showing of substantial prejudice . . . . It is not sufficient merely to show that the accused would have had a better chance for acquittal at a separate trial.") (quoting *United States v. Lyles,* 593 F.2d 182, 189 (2 Cir. 1979) which in turn quoted *United States v. Stirling,* 571 F.2d 708, 733 (2 Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978)); *United States v. Kopel,* 552 F.2d 1265, 1272 (7 Cir.), *cert. denied,* 434 U.S. 970, 98 S.Ct. 520, 54 L.Ed.2d 459 (1977) ("The defendant must make a 'strong showing of prejudice' in order to support a claim of prejudicial joinder."). See also *Bruton v. United States,* 391 U.S. 123, 131 n. 6, 88 S.Ct. 1620, 1625 n. 6, 20 L.Ed.2d 476 (1968) (Rules 8(b) and 14 are designed to promote economy where this can be done "without *substantial* prejudice to the right of the defendants to a fair trial") (emphasis supplied); *United States v. Rucker,* 586 F.2d 899, 902 (2 Cir. 1978); *United States v. Herrera,* 584 F.2d 1137, 1143 (2 Cir. 1978); *United States v. Bernstein,* 533 F.2d 775, 789 (2 Cir.), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). As said in *United States v. Johnson,* 478 F.2d 1129, 1131 (5 Cir. 1973), "[a] trial court's denial of severance will not be lightly overturned, and a defendant has an extremely difficult burden of showing on appeal that the lower court's action was an abuse of discretion."

The reason why substantial prejudice from a denial of relief under Rule 14

must be shown is that to reverse on any lesser showing would undermine the policies behind Rule 8 and essentially read that rule from the books. Rule 8(a), with which we are here concerned, necessarily recognizes the adverse effect on the defendant by a joinder of counts, but considers this to be outweighed by gains in trial economy when one of the criteria of the rule are met. Granting separate trials under Rule 14 simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one, would reject the balance struck in Rule 8(a), since this type of "prejudice" will exist in any Rule 8(a) case. See *United States v. Smith*, 112 F.2d 83, 85 (2 Cir. 1940) ("That [defendant] suffered some disadvantage is not improbable, for, even when cautioned, juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one. But Congress has authorized consolidation in the belief that public considerations of economy and speed outweigh possible unfairness to the accused."); *United States v. Barrett, supra*, 505 F.2d at 1106 ("Obviously any adding of offenses to others is prejudicial to some extent.").

While the mere fact that "juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one" does not call for relief under Rule 14, trial courts must be alert to the danger that, as said by Judge L. Hand before adoption of the Rules of Criminal Procedure, in *United States v. Lotsch*, 102 F.2d 35, 36 (2 Cir.), *cert. denied*, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939):

> the jury may use the evidence cumulatively; that is, that although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all.

However, as he went on to explain:

> When the accused's conduct on several separate occasions can properly be examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury.

*Id.* The latter quotation fits this case exactly. The jury could readily examine Werner's conduct on the two different occasions separately and Judge Costantino clearly and repeatedly ordered it to do so, see Appendix 42, 62, 63, 75, in language fully measuring up to that approved by the cases. See, e. g., *United States v. Jamar*, 561 F.2d 1103, 1107 (4 Cir. 1977); *United States v. Pacente*, 503 F.2d 543, 547–48 (7 Cir.) (en banc), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974); *United States v. Hatcher*, 423 F.2d 1086, 1089–90 (5 Cir.), *cert. denied*, 400 U.S. 848, 91 S.Ct. 35, 27 L.Ed.2d 86 (1970). This case differs totally from *Drew v. United States*, 118 U.S.App.D.C. 11, 19, 331 F.2d 85, 93 (D.C.Cir.1964), where the record showed confusion both by witnesses and by the jury. See *United States v. Weber, supra*, 437 F.2d at 332.[7]

---

7. In view of the foregoing discussion it is hardly necessary to rely on a standard response by the Government to claims that the trial court abused its discretion in refusing to grant separate trials, namely, that evidence of each crime could have been introduced on a separate trial of the other. See note 5 *supra*. However, it is rather plain that, even under recent decisions of this court with respect to other crimes evidence cited in *United States v. Halper, supra*, 590 F.2d at 431–32, evidence of the 1976 theft would have been admissible in a trial of the 1978 robbery. F.R.E. 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof

of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Here evidence of the 1976 theft showed Werner's *opportunity* to carry out an inside job at the Lufthansa cargo building, his *knowledge* of how to do it, and a *motive* for the more grandiose 1978 scheme, as well as corroborating the testimony of Gruenewald and Fischetti concerning Werner's attempts to involve them in the 1978 robbery. See *United States v. Williams*, 577 F.2d 188, 192 (2 Cir.), *cert. denied*, 429 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). For many of the same reasons, evidence of the 1978 robbery would have been admissible on a trial of the 1976 theft. See *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1149 (2 Cir.), *cert. denied*, 439 U.S. 913, 1005, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978) ("The proof

All that remains for discussion is Werner's claim that he was prejudiced by the joint trial because if separate trials had been accorded, he would have testified with respect to the 1978 robbery. It is settled that a mere unexplicated assertion of this sort is not enough. See *Baker v. United States, supra,* 401 F.2d at 977 ("no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other"); *Tarallo v. LeVallee,* 433 F.2d 4, 6 (2 Cir. 1970), *cert. denied,* 403 U.S. 919, 91 S.Ct. 2235, 29 L.Ed.2d 697 (1971) (quoting from *Baker v. United States, supra* ); *United States v. Jamar, supra,* 561 F.2d at 1108 n. 9 ("a particularized showing must be made concerning the testimony the defendant wishes to give and his reasons for remaining silent on the joined counts, so that the court can make an independent evaluation of whether the defendant will be prejudiced to an extent that outweighs the interest favoring joinder"); *United States v. Florio,* 315 F.Supp. 795 798 (E.D.N.Y.1970). Werner gave no explanation whatever as to what his testimony would be with respect to the 1978 robbery or why he could not have given such testimony at a joint trial, especially since evidence of the 1976 crime would have been admissible at a trial on the 1978 robbery whether he testified at the latter or not, see note 7 *supra.* Contrast *Cross v. United States,* 118 U.S.App.D.C. 324, 327, 335 F.2d 987, 990 (D.C.Cir.1964), where a defendant wished to testify on only one count and the court found that in a separate trial of the count on which he did not wish to testify "the jury would not have heard his admissions of prior convictions and unsavory activities . . .."

Since the counts were properly joined and the trial court did not abuse its discretion by refusing to direct separate trials, the judgment of conviction is affirmed.

is admissible even if the acts occurred after the crime charged in the indictment."); *United States v. Cavallaro,* 553 F.2d 300, 305 (2 Cir. 1977) ("It is well-established in this circuit that evidence of subsequent similar acts including other crimes, is admissible . . . ."); *United States v. Myers,* 550 F.2d 1036, 1044 n. 10 (5

Cir. 1977), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978) ("The fact that the uncharged crime occurred after rather than before the charged crime does not affect its admissibility."); Weinstein and Berger, Evidence 404–43 (1978 Cumulative Supp. 14).