**UNITED STATES of America,**

v.

**Edward S. BUCHANAN, Defendant.**

**Crim. No. 95–10188–NG.**

United States District Court,
D. Massachusetts.

June 4, 1996.

Francis J. DiMento, DiMento & Sullivan, Boston, MA, for Defendant Edward S. Buchanan.

Anita S. Lichtblau, New England Bank Fraud Task Force, Boston, MA, William T. Clabault, Trial Attorney, New England Bank Fraud Task Force, Department of Justice, Boston, MA, for U.S.

### MEMORANDUM AND DECISION RE: DEFENDANT'S MOTION FOR SEPARATE TRIALS

GERTNER, District Judge:

## I. INTRODUCTION

The defendant, Edward S. Buchanan, has been charged with mail fraud, misapplication

of bank funds, money laundering, wire fraud, currency structuring and conspiracy.[1] The defendant moves under Rules 8(a) and 14 of the Federal Rules of Criminal Procedure to have some of the charges severed from the others.

As discussed below, I **ALLOW** the defendant's motion to sever and order that Buchanan be tried in separate trials for the offenses relating to his conduct as an officer of the Massachusetts Bank & Trust Company ("MassBank") and those relating to his role in the Canal Street Associates Limited Partnership. In making this determination, I am obliged to look at the language of Rules 8(a) and 14 of the Federal Rules of Criminal Procedure, which deal with joinder of separate offenses on a single indictment. To give context to this language, I will also look at other situations in which the law evaluates the relationship between two ostensibly different offenses, most notably where the question involves whether evidence of other "bad acts" is admissible under Rule 404(b) of the Federal Rules of Evidence.

The Indictment returned against Buchanan makes two sets of allegations: The first concerns Buchanan's role as Bank President of MassBank, alleging that he abused the trust of his office, concealed certain conduct from bank directors and flaunted federal banking laws, to the detriment of the bank and for his own benefit. The second concerns Buchanan's role as a principal in a real estate partnership, charging that Buchanan, unknown to his partners, made certain loans and defrauded the partnership, this time to the detriment of the business and for his personal benefit.

The defendant has moved for separate trials under Fed.R.Crim.P. 8(a) and 14.[2] He proposes that charges relating to his alleged misconduct as President of MassBank, be severed from the charges relating to his allegedly criminal conduct as a principal of Canal Street Associates Limited Partnership.

Buchanan argues that, in the first instance, joinder of these two groups of offenses is not permitted under Fed.R.Crim.P. 8(a), and that, in any event, the two groups of offenses should be severed, since a single trial on both would unfairly prejudice the defendant. Fed.R.Crim.P. 14.

The government disagrees, arguing that joinder is not only permissible but wise. It contends that the purpose of each scheme was to enrich Buchanan by defrauding others, that the modus operandi for each scheme was fraud and that each involved the defendant's abuse of his position of trust at Mass-Bank: all factors that render initial joinder of the charges proper. Further, the government argues that severance is not called for since no unfair prejudice is likely to result from joinder and judicial economy weighs in favor of trying the case as a whole.

I am not persuaded by the government's characterization of its case.

## II. SUMMARY OF THE FACTS

The facts recited are culled from the Superseding Indictment returned against Buchanan on November 29, 1995.

### A. Allegations as President of Mass-Bank

Defendant Edward Buchanan was the president and chief executive officer of Mass-Bank.[3] He had held this position since 1971, and his duties included serving as chairman

---

1. On June 20, 1995, defendant Edward Buchanan was indicted on conspiracy, misapplication of bank funds and money laundering. On November 29, 1995, the initial indictment was superseded. Buchanan currently stands charged with one count of conspiracy, 18 U.S.C. § 371, seven counts of misapplication of bank funds, 18 U.S.C. § 656, one count of bank fraud, 18 U.S.C. § 1343, and seven counts of money laundering in violation of 18 U.S.C. § 1957, one count of currency structuring, 31 U.S.C. § 5324, and one count of money laundering in violation of 18 U.S.C. § 1956.

2. Buchanan initially moved for separate trials on September 25, 1995. The Magistrate Judge reserved the motion for this Court.

3. MassBank was a banking institution chartered in the Commonwealth of Massachusetts, with headquarters in Brockton, Massachusetts. Deposits at the bank were insured by the Federal Deposit Insurance Corporation (FDIC).

of the Bank's Board of Directors.[4] Buchanan also owned over 99% of the bank stock and he owned and controlled the 245 Trust, a realty trust which in turn owned the building in which the MassBank headquarters were located.

Beginning no later than May 28, 1986, the Board was required to approve all disbursements of Bank funds and remuneration to Buchanan and his related interests. Apparently this approval process involved the Board's consideration of the purpose and ultimate beneficiary of the disbursements and any benefit to MassBank from the expenditure. In addition, Buchanan was required to provide the Board with documentation with respect to his business expenses exceeding a certain amount.

According to the Indictment, Buchanan did not comply with these requirements. To the contrary, it is alleged that beginning in or about June of 1986 and continuing through in or about May of 1991, Buchanan conspired to misapply bank funds in two related schemes. First, the Indictment charges that Buchanan intentionally misdirected bank funds to pay for certain personal and family expenses, including purchasing cars,[5] investing in a yacht,[6] paying full-time salaries to family members and crew members of the yacht who did not perform any services or inconsequential services for the Bank.[7] Second, it is alleged that Buchanan illegally pocketed $50,000 of MassBank funds, received in settlement from a legal malpractice 1992 lawsuit brought by MassBank, Buchanan and former MassBank Vice President Jerome Harriman against the Bank's former law firm. According to the Indictment, without the knowledge or consent of MassBank's Board of Directors, Buchanan took the $50,000, laundered the money and structured various deposits and transactions to avoid reporting requirements.

### B. *Allegations as Principal in Canal Street Associates*

The Indictment contains other allegations as well. Buchanan was a principal in Canal Street Associates Limited Partnership (CSA), a partnership Buchanan formed with two other business associates in 1985 for the purpose of purchasing and managing a large industrial mill complex located in Lawrence, Massachusetts.[8] It is alleged that, beginning in 1990 and continuing through December 1993, Buchanan intentionally devised a scheme to defraud his CSA partners and to enrich himself and his family.

Apparently, upon refinancing the loan used to purchase the partnership property in Lawrence, through Haymarket Co-operative Bank in Boston, Massachusetts, Haymarket advanced CSA about $1,750,000 to pay off CSA's prior debt. Haymarket advanced an additional $700,000 in loan proceeds to CSA. With the approval of all partners, CSA

---

4. The Board of Directors includes a Bank vice president, one or two other officers of the Bank and three members who were not Bank employees. The Board met on a monthly basis.

5. The Indictment alleges that MassBank, in whole or in part, paid for, insured, and in some instances paid for the repairs of, luxury automobiles that were for the private use of Buchanan and his two daughters.

6. According to the Indictment, until May 18, 1989, the First Massachusetts Leasing Corporation (FMLC) was a wholly-owned subsidiary of First Florida Management Corporation, a corporation owned and controlled by Buchanan. FMLC owned and managed various assets, including a luxury yacht and luxury cars, all used by Buchanan, his family members and by some MassBank employees. On May 18, 1989, MassBank purchased fifty percent of FMLC's stock. On March 13, 1990, MassBank sold its fifty percent share of FMLC to the 245 Trust. Allegedly, Buchanan directed MassBank employees to pay full-time salaries and benefits to the yacht's crew members.

The yacht was kept at Buchanan's home in Florida about half the year and was kept in Falmouth, Massachusetts for the remaining six months. Allegedly, Buchanan used the yacht primarily for his own benefit and that of his family and friends, not for MassBank business.

7. According to the Indictment, the defendant's two daughters received salaries and employee benefits from MassBank for services they did not perform. In addition, his daughters had use of automobiles paid for in part and insured by, MassBank.

8. There is no allegation of impropriety with respect to the financing of this project. Indeed, it appears from the Indictment that MassBank had nothing to do with the financing.

placed about $400,000 of the proceeds in a certificate of deposit (CD) at MassBank, in the partnership name. The partners all agreed that the funds in the CD would be used to cover expenses and any operating deficiencies.

According to the Indictment, Buchanan, acting without knowledge or authorization of his two other partners, took $500,000 from the CSA/CD and extended a loan, on an unsecured basis, to a MassBank customer.[9] The loan was repaid, with the funds deposited into another MassBank CD.

It is further alleged that Buchanan orchestrated a loan between CSA and his wife, Linda Buchanan, without the prior knowledge or authorization of his partners. His wife executed a promissory note with respect to the loan, and on or about April 24, 1991, Buchanan transferred $500,000 of CSA funds from a certificate of deposit bearing the partnership name at MassBank ultimately to an account in Florida in the name of "Edward S. Buchanan, P.O.A. Linda Buchanan." Additionally, Buchanan is alleged to have drawn $40,000 from CSA funds at Baybank to assist his daughter in starting a business wholly unrelated to the business of CSA. It is alleged that Buchanan concealed all this activity from his partners by creating misleading financial statements. Finally, it is alleged that Buchanan laundered the proceeds of these transactions through various accounts.

9. The government does not allege that, as a general matter, Buchanan lacked the authority to withdraw funds from the partnership account.

10. The Indictment charges Buchanan as follows: Counts I through VII charge the defendant, as an officer, director and the sole stockholder of MassBank, with conspiracy and misapplication of bank funds, in violation of 18 U.S.C. §§ 371 and 656. Counts VIII through XV charge the defendant, as a partner in Canal Street Associates Limited Partnership, with wire fraud and money laundering in violation of 18 U.S.C. §§ 1343 and 1957.

Counts XVI through XXV relate to Buchanan's misconduct with respect to the legal malpractice settlement into which he, individually and as MassBank President, entered in June of 1992 with MassBank's former law firm. Specifically, Count XVI charges Buchanan with misapplica-

## III. ANALYSIS

### A. Grouping of Offenses Under the Indictment

The defendant does not question the appropriateness of a single trial on all the charges related to Buchanan's conduct as MassBank President, that is on Counts I–VII and XVI through XXV.[10] His challenge focuses instead on the joinder of the counts related to his conduct as MassBank President with the counts related to his role as a principal in Canal Street Associates Limited Partnership, requesting that Counts VIII through XV, be tried separately. The defendant argues that the initial joinder is improper, under Rule 8(a); and that, in any event, Rule 14 demands that the counts be severed to avoid substantial prejudice to the defendant.

I shall address each of defendant's challenges in turn.[11]

### B. Misjoinder: Rule 8(a) Analysis

In deciding a defendant's motion for separate trials, my initial inquiry focuses on the language of Fed.R.Crim.P. 8(a), which provides the outer boundaries of what crimes may be charged in the same indictment, or charged in a single trial against a single defendant.[12] Joinder is permitted where the offenses charged are: (1) based on the same act or transaction; (2) based on two or more acts or transactions connected together or constituting parts of a common scheme or plan; or (3) based on two or more acts or transactions of the same or similar charac-

tion of bank funds in violation of 18 U.S.C. §§ 656, 2; Count XVII charges him with currency structuring, under 31 U.S.C. § 5324(3) and 18 U.S.C. § 2, and Counts XVIII through XXV charge him with money laundering, under 18 U.S.C. §§ 1957, 2.

11. The Rules of Criminal Procedure, in Rules 8 and 14, require determinations that are analytically distinct. As the Second Circuit has commented, "The question of the propriety of joinder under Rule 8 and of refusal to grant relief from prejudicial joinder under Rule 14 are quite different in nature, although some decisions tend to obscure this." *United States v. Werner*, 620 F.2d 922, 926 (2d Cir.1980) (Friendly, J.).

12. Rule 8(b) of the Federal Rules of Criminal Procedure governs joinder of multiple defendants and offenses.

ter.[13]

Rule 8 contemplates joinder in a range of circumstances, from those situations in which the relationship between and among offenses charged is clear—and the events pertaining to each inextricably tied to the others—to those circumstances in which the offenses are fairly discrete but sufficiently linked in fact and in character to permit a single trial.

It is the lower end of the range that line drawing between permissible and improper joinder sometimes becomes imprecise and the standards applied confusing.

■ To give form to what is permissible at the lower end of the range contemplated by Rule 8, courts are directed to examine "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred," *United States v. Taylor,* 54 F.3d 967, 973 (1st Cir.1995), so that the rule of joinder does not become a license to join any and all charges made against a single defendant, no matter what their interconnection. *See, e.g., United States v. Edgar,* 82 F.3d 499 (1st Cir.1996).

■ One point seems both clear and prudent: A vague thematic connection among offenses may not support joinder. The government cannot link cases simply by changing the level of abstraction—namely that this case is about an abuse of trust, rather than about two distinct allegedly illegal schemes.

In the case before me, the government seeks joinder at the lower end of the range permitted under Rule 8. To avoid confusion and an impermissible stretching of the appropriate boundaries of Rule 8, a careful analysis—not only under Rule 14 but also under Rule 8—is required.[14]

### 1. *Part of a Common Scheme or Transactions that are Connected Together*

■ With respect to the Rule 8(a) provision allowing joinder where the offenses are either "part of a common scheme or plan" or are "connected together," the government's argument proceeds at two levels. At a general level, the government suggests that there are sufficient thematic similarities between two groups of charges to warrant joinder, since Buchanan is charged, in each set of offenses, with schemes to defraud his victims and enrich himself through false representation.

At a more specific level, the government also argues that there is a concrete relationship between the two groups of offenses, based, essentially, on three allegations: first, that the CSA account out of which at least some of the monies wrongfully flowed was located at MassBank; second, that bank employees carried out Buchanan's fraudulent scheme under his direction; and third, that a concealed loan was extended to a long-time MassBank customer who had reached his lending limit with respect to that banking institution, in order to ensure that he kept his business with MassBank.

The term "connected together" may seem to evade precise definition. Generally, courts have understood the terms "connected together" and "part of a common scheme or plan" as theoretically linked; that is, as both permitting joinder where counts "grow out of related transactions." *E.g., United States v. Randazzo,* 80 F.3d 623, 627 (1st Cir.1996). This assumption has assisted courts in defining what sort of a nexus is necessary to

---

**13.** Rule 8(a) states as follows:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Fed.R.Crim.P. 8(a); *see also, e.g., United States v. Taylor,* 54 F.3d 967, 973 (1st Cir.1995).

**14.** While the First Circuit has reiterated that "Rule 8(a)'s joinder provision is generously construed in favor of joinder ... in part because Fed.R.Crim.P. 14 provides a separate layer of protection where it is most needed," *United States v. Randazzo,* 80 F.3d 623, 627 (1st Cir. 1996), that extra layer does not relieve the trial court of its responsibility to ensure that joinder is proper in the first instance.

determine that offenses are sufficiently "connected" to merit joinder.[15]

An examination of the reasoning articulated in *United States v. Halper*, 590 F.2d 422 (2d Cir.1978), is instructive. In *Halper*, the Second Circuit reviewed a trial court's decision to permit joinder of charges of medicaid fraud and income tax evasion against a single defendant.[16] The government sought to join the offenses arguing, under Rule 8(a), that they were "connected" transactions, because Halper's scheme to defraud the Medicaid system resulted in income which he then did not report, in violation of the tax laws. *Id.* at 429. However, the government did not allege a direct link between the income not reported and the money received from the allegedly fraudulent enterprise. The court was not persuaded by the evidence produced at trial, noting, "[c]ommission of the one of the offenses neither depended upon nor necessarily led to the commission of the other; proof of the one act neither constituted nor depended on proof of the other." *Id.*

The teaching of *Halper* has not been lost on the First Circuit. *United States v. Randazzo*, 80 F.3d at 627 (citing *Halper* with approval); *United States v. Edgar*, 82 F.3d 499 (1st Cir.1996).

In *Edgar*, the First Circuit considered joinder of three charges in a single indictment: workers' compensation fraud, automobile insurance fraud and bankruptcy fraud. Each charge contained the allegation that the accused made fraudulent representations to enrich himself.

In reviewing the propriety of the joining of the workers' compensation fraud and the automobile accident fraud, the *Edgar* Court upheld joinder under Rule 8(a), based on some very specific and concrete points of similarity between the charged offenses: each crime involved the identical modus operandi; in each the defendant claimed total disability, following an asserted injury to the back; in each, he claimed of loss of income; and in each, he submitted false statements on official forms, among other things, in order to collect from the insurance carriers. Additionally, the court noted, the time period between the two offenses overlapped.

The court distinguished the propriety of joinder of the counts involving compensation fraud and automobile accident fraud from joinder of those offenses with the charges involving bankruptcy fraud. The *Edgar* Court was not persuaded that joinder of the bankruptcy fraud was appropriate.[17] It determined that there was not "common scheme or plan," *id.* at 503, that the charges were brought under different statutes, that they involved different victims, and that they occurred in different locations. The Court

---

**15.** For instance, courts have regularly held that joining offenses, as "connected together," does not offend the limits of the Rule where proof of one offense "constitutes a substantial portion of the proof of the other," *United States v. Windom*, 19 F.3d 1190, 1196 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994).

In *Windom*, the Seventh Circuit reviewed a trial court's denial of a defendant's motion to sever counts at trial, where one count charged gun possession and the others charged drug dealing and possession. The firearm charge arose from the search of the defendant's car, connected with law enforcement's investigation of the defendant's drug trafficking activities. The *Windom* Court held that the firearms violation and the narcotics charges were connected together and therefore properly joined. The Court noted that the firearms statute which the defendant was accused of violating, in its terms, linked the offense to drug trafficking, *see* 18 U.S.C. § 924(c)(1), and that, since it is generally the experience of courts that firearms are "tools for the execution of drug trafficking," where fire-

arms and drugs are found in the same search, the offenses are "connected together" such that they are properly joined. *Id.* at 1196–1197.

**16.** Joinder in this case involved Rule 13 of the Federal Rules of Criminal Procedure, which permits offenses charged in two or more indictments to be tried together, where the offenses could have been joined in a single indictment.

**17.** The First Circuit ultimately held that, on the facts of the case and the record at trial, any misjoinder was harmless error, since the defendant was acquitted by the court of the bankruptcy fraud and of several counts of mail fraud in the workers' compensation scheme before the matter was given to the jury. *Id.* at 502–503. Of the counts considered by the jury, the defendant was acquitted of one, did not reach a verdict on nine, and was convicted of three, indicating that spillover prejudice did not unduly taint their deliberations. The Court also noted that the trial court had given appropriate limiting instructions and that exhibits solely relating to the bankruptcy fraud had been struck.

also noted that the basic purpose of the fraud seemed slightly different, insofar as the first two offenses were both designed to secure money from asserting injury to the accused's back, while the third offense involved the defendant's attempt to avoid obligations to his former wife. Under these circumstances, the Court indicated that joinder was inappropriate under Rule 8(a). *Compare United States v. Nicely*, 922 F.2d 850, 854 (D.C.Cir. 1991);[18] *with United States v. Taylor*, 54 F.3d 967 (1st Cir.1995).[19]

The instant case is plainly in line with *Halper* and *Edgar*. As to the argument that there are concrete "connections" sufficient for joinder under Rule 8, while the two groups of charges both involve MassBank in some respect and occurred during overlapping—although not fully coincident—time periods, the similarities end there.

The two sets of charges lie under different statutes;[20] the two offense groups involve entirely different victims (with Buchanan's private business partners suffering in one group and a federally insured banking institution suffering in the other); and they concern different modus operandi. Furthermore, the single link with respect to the two groups of offenses, that is, the loan Buchanan extended to a longtime bank customer through CSA, did not involve any link in criminal activities between the accused and his two victims. Indeed, the government has conceded that the loan was extended with the full knowledge and approval of MassBank's Board of Directors. Under the distinctions drawn in *Edgar*, the government's argument

---

**18.** In *Nicely*, the reviewing court examined the propriety of joinder at trial, where the defendant was charged with conspiracy involving a scheme to defraud sellers of computers into offering money to procure contracts and a separate scheme to launder money through evading currency reporting requirements. Where it was alleged that the victim of the two conspiracies was not the same, the government had relied on a thematic similarity between the two schemes—arguing that they both involved the common objective of making money and shared a common modus operandi because they both involved telling lies. The court was not persuaded, noting that such an abstract similarity was "patently insufficient."

Notably, the connection suggested in *Nicely* between the kinds of falsehoods told was closer than the nexus provided in this case: in *Nicely*, the government asserted that both conspiracies "shared a common method insofar as they both relied on 'falsehoods about the relationship between'" the defendant's investment corporation and one of the defendant's client. *Id.* at 850. Even that level of similarity is missing in the case before me.

**19.** In *United States v. Taylor*, 54 F.3d 967 (1st Cir.1995), the appellant challenged his conviction based on the denial of his trial motion to sever the count related to one robbery from counts related to a second robbery. The court held that joinder was appropriate in the first instance, and that severance was not required to prevent substantial prejudice. The *Taylor* Court determined that where the offenses were charged under the same statute, took place in the same geographic area (downtown Boston), and occurred during the time period, and where "evidence here suggests that the first robbery was, in effect, a training mission for the second," the two robberies were parts of a "common scheme or plan" within the meaning of Rule 8(a). *Id.* at 973–974.

**20.** While there are two money laundering charges, they lie under different provisions of the Money Laundering Control Act of 1986, in which Congress established two distinct money laundering offenses, 18 U.S.C. §§ 1956, 1957. To be sure, the two sections are viewed as companion statutes; however, their differences are not insignificant. *See, e.g., United States v. Gabriele*, 63 F.3d 61, 68 (1st Cir.1995).

Section 1956 prohibits an individual's involvement in a financial transaction when the individual knows that the property involved in the transaction represents proceeds of particular unlawful activity. Generally, under Section 1956, the individual must engage in the transaction with either the specific intent to promote the specified unlawful activity, or with the knowledge that the purpose of the transaction is either to avoid a reporting requirement or to conceal the nature, location, source, ownership, or control of such proceeds.

As a general matter, Section 1957 prohibits an individual from engaging or attempting to engage in a monetary transaction involving property valued at more than $10,000, when the individual knows that the property is derived from a specified unlawful activity. The statute defines a monetary transaction as a "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds ... by, through, or to a financial institution."

The distinction between the two sections focuses on the intent requirements for each. While Section 1956 requires that a defendant engage in the transaction with the intent to promote the carrying on of a specified unlawful activity, Section 1957 has not such requirement. The penalties for each crime reflect this difference.

based on its theory that the schemes are "connected" fails.

The government's more thematic theory for joinder likewise fails. The notion that both involved an abuse of position, thereby making joinder appropriate, requires drawing a connection that is entirely too speculative. The government has produced no evidence which would tend to show that, in directing bank employees to wire funds from CSA's account to a Florida account, Buchanan was doing anything other than that which was done by normal bank customers.

### 2. *Same or Similar Character*

■ I have said that Rule 8 permits joinder in a range of situations. Undoubtedly at the lower end of the range is the provision allowing joinder where offenses are "of the same or similar character." *See United States v. Randazzo*, 80 F.3d at 627–628 & n. 1.[21]

In the case before me, the government argues that all the offenses should be joined because they meet this test. As support, the government simply repeats that both offenses involved MassBank in some respect, had as their goal the defendant's personal enrichment and were accomplished through fraudulent representations and defrauding others of money. Defendant argues that only at the most general level can these offense be said to share the requisite same or similar character and that the nature of those similarities do not warrant joinder.

■ The defendant has the better argument. The same or similar character provision of Rule 8(a)—if it is to have meaning—must be narrowly applied to situations where permitting joinder will not lead to the sort of prejudice addressed in Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) prohibits the admission of other bad acts evidence in order to show the defendant's bad character and his or her propensity to act in conformity therewith. Fed.R.Evid. 404(b);[22] *Randazzo*, 80 F.3d at 628 & n. 1;[23] *Halper,*

---

**21.** The First Circuit's reasoning in *Edgar* closely tracked its decision in *Randazzo*. In *Randazzo*, the First Circuit considered whether the trial court erred in permitting joinder of four counts of conspiracy and 93 substantive counts in connection with the making of false statements to the government and introducing improperly branded or adulterated food into interstate commerce in connection with the processing and sale of shrimp, as well as four counts of causing a company to file false corporate tax returns. The trial court had permitted joinder of the tax return charges with the "shrimp charges."

The First Circuit determined that such joinder was in error—although the error was harmless. *Id.* at 627. The Court noted that "whatever the rationale [for joinder of offenses as same or similar in character], we think it is very hard to describe adulterating or mislabeling shrimp as offenses "similar" to tax fraud—except at a level of generality so high as to drain the term of any real content." *Id.* at 628.

**22.** Rule 404(b) provides, in relevant part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 403 states in relevant part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403; *see also*

*United States v. Moccia*, 681 F.2d 61 (1st Cir. 1982) (Breyer, J.)

Some commentators have noted that offenses joined under the "similar character" provision of Rule 8(a) present a defendant with a situation in which propensity logic alone links the events— the precise sort of prejudicial thinking prohibited by Rule 404(b). *See, e.g.,* 8 Moore, Federal Practice 91, 8.02(1), at 8–3 n. 3; 8:05(2) (Cipes ed. 1978) ("such form of joinder is inherently prejudicial, with little balancing advantage in terms of trial convenience"); Note, Joint and Single Trials under Rule 8 and 14 of the Federal Rules of Criminal Procedure, 74 Yale L.J. 553, 560 (1965) (recommending doing away with Rule 8(a)'s same or similar character joinder); ABA Standards, Joinder and Severance § 2.2(a) (1968) ("Whenever two or more offenses have been joined for trial solely on the ground that they are of the same. or similar character, the defendant shall have the right to a severance of the offenses.").

**23.** In *Randazzo*, the First Circuit noted: "It is obvious why Congress provided for joinder of counts that grow out of related transactions— ones that are 'connected' or 'part of a common scheme or plan;' the reason for allowing joinder of offenses having 'the same or similar character' is less clear. But whatever the rationale, we think that it is very hard to describe adulterating or mislabeling shrimp as offenses "similar" to tax fraud—except at a level of generality so high as to drain the term of any real content." *Id.*

590 F.2d at 430;[24] *see also, e.g., United States v. Windom,* 19 F.3d 1190, 1195 (7th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994) (multiple counts of possession with intent to distribute heroin and cocaine were properly joined, since the crimes are of the same character and the elements to be proved in each count is the same);[25] *United States v. Holloway,* 1 F.3d 307, 311 (5th Cir.1993).[26] A broad reading of the "similar character" provision of Rule 8(a) would invite the very sort of irrelevant "bad character" reasoning prohibited under Rule 404(b). *Randazzo,* 80 F.3d at 627—628 & n. 1.

Put simply, one way of evaluating a Rule 8(a) "similar character" joinder, is to pose the question in terms of Rule 404(b): If the government had charged only the misapplication of bank funds related to Buchanan's role as Bank President, could the government introduce evidence of malfeasance in connection with the Canal Street Associates Limited Partnership?[27] The answer is clearly "no."

---

**24.** The *Halper* Court commented that the "same or similar character" prong historically has been considered satisfied where "evidence of one offense would be admissible in a separate trial on the other offense as evidence of 'other crimes, wrongs, or acts.'" *Id.* at 431. The court then stated: "Whatever the writers of Rule 8(a) intended to convey when they used the phrase 'same or similar character,' we do not believe that the phrase was intended to include offenses as different as those intended to include offenses as different as those with which Halper was charged. Granted, both charges involved alleged attempts by Halper to manipulate those whom he had employed in a way that would work to his profit, receiving too much on the one hand and paying too little on the other. But to hold that this trace of sameness is sufficient under the Rule would add ambiguity to an already ambiguous term, this we decline to do." *Id.*

**25.** In *United States v. Werner,* 620 F.2d 922, 926–927 (2d Cir. (1980)) (Friendly, J.) the Second Circuit, which has endorsed application of the "same or similar character" prong of Rule 8(a) more fully than the First Circuit has, considered a case in which a single defendant was charged with conspiracy to violate and a violation of the Hobbs Act and with a violation of federal law arising from theft from a foreign shipment of foreign currency.

Although the Hobbs Act and the theft offenses sounded under different statutes, the Court found that the same or similar character test was met since (1) the two offenses involved theft of values from the same location, the very same cargo warehouse at an airport, (2) both were accomplished by the defendant's "exploitation of his knowledge of the airline's cargo handling procedures;" (3) the first crime was, in effect, a training run, and it "stimulated" the defendant "to be on alert to commit a larger one;" (4) the defendant approached his co-conspirators in the first offense to assist him in the second, he paid one of them for his silence, and considered investing part of the profit of the second illegal transaction with another.

The Court held that, given all these similarities, that one offense involved violence while the other did not would not be dispositive. *Id.* Notably,

the Court reasoned that its conclusion was in line with *United States v. Halper,* 590 F.2d 422 (2d Cir.1978).

*Werner,* when read to be consistent with *Halper,* suggests a narrow reading of the "same or similar character" prong of Rule 8(a).

**26.** The *Holloway* Court noted, with respect to the principles on which Rule 404(b) is based: "We note first that evidence of a prior conviction has long been the object of careful scrutiny and use at trial because of the inherent danger that a jury may convict a defendant because he is a 'bad person' instead of because the evidence of the crime with which he is charged proves him guilty." *Id.*

**27.** Most frequently, Rules 404(b) and 403 are referenced only at the final stage of a reviewing court's inquiry into the appropriateness of joinder: whether the misjoinder, if it was found, amounts to harmless error. *See United States v. Lane,* 474 U.S. 438, 448–449, 106 S.Ct. 725, 731–732, 88 L.Ed.2d 814 (1986).

Courts have reasoned, not inappropriately, that where evidence of the other bad acts would have been cross-admissible in separate trials, no prejudice can be said to have resulted from the joinder of the charges. *See, e.g., United States v. Holloway,* 1 F.3d 307, 311 (5th Cir.1993); *see also United States v. McQuiston,* 998 F.2d 627, 628 (8th Cir.1993) (defendant' motion to sever charges of four bank robberies since the robberies were carried out in "such similar ways that the evidence of the other robberies would have been admissible to prove [the defendant's] identity, even if the charges had been severed. *See* Fed.R.Evid. 404(b)."); *United States v. Patterson,* 20 F.3d 801, 805 (8th Cir.) *cert. denied,* — U.S. —, 115 S.Ct. 137, 130 L.Ed.2d 79 (1994) (where defendant asserted defense based on a claim of false identity, evidence of other plane hijacking would have been cross-admissible under Rule 404(b); hence joinder does not prejudice the defendant); *United States v. Hollis,* 971 F.2d 1441, 1457 (10th Cir.1992) *cert. denied,* 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993) (severance not warranted where "evidence of similar conduct would likely have been admissi-

Evidence of one set of schemes do not amount to evidence necessary to prove elements of another. They are not admissible under Rule 404(b), for instance, to show plan, opportunity, knowledge or motive. There is no allegation here that the alleged schemes to defraud in which Buchanan engaged as MassBank President were the predicate to the alleged scheme to defraud his CSA partners; there is no allegation that evidence of one scheme would be admissible to prove identity or absence of mistake. Indeed, the level of similarity is sufficiently abstract that the prejudice of admitting evidence of one scheme would give rise to precisely the sort of "bad character" testimony deemed inadmissible under Rule 404(b).

Accordingly, I find joinder under Rule 8(a)'s "same or similar character" provision improper.

### 3. *Prejudicial Joinder: Severance under Rule 14*

■ Because I hold joinder inappropriate under Rule 8(a), I need not explore further. However, the Rule 14 analysis both illuminates my reasoning under Rule 8(a) and bolsters the result. For even if joinder were appropriate under Rule 8(a), I find that the groups of offenses should be severed to avoid confusion and unfair prejudice to a defendant that is likely to result from such joinder.

■ Rule 14 provides that if offenses are properly joined under Rule 8, they may nevertheless be severed where it appears that the defendant will likely be prejudiced by the joinder. In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience

of separate trials. *United States v. Perkins,* 926 F.2d 1271, 1280 (1st Cir.1991); *United States v. Cardall,* 885 F.2d 656, 667 (10th Cir.1989).[28]

The defendant moves to sever the counts in the indictment under Rule 14, arguing that impermissible prejudice is likely to result from joinder of the challenged groups of offenses at trial. The government counters, arguing that judicial economy favors a single trial and that the defendant has not met his high burden of showing that joinder is likely to result in substantial prejudice amounting to a miscarriage of justice.

The government overstates the burden on the defendant and underestimates the prejudice that would likely result in this case.

■ As to the defendant's burden of proof, I find that the defendant in this case has demonstrated that substantial prejudice would likely result from a joint trial. While the government has suggested that I require a more rigorous showing than that produced by the defendant, they press too far on this point. It appears that the government would have me sever the counts only where the defendant—at this stage—could show that a miscarriage of justice would surely result if severance were not permitted. That standard requires too much from a defendant at this juncture in the proceedings. *Accord Perkins,* 926 F.2d at 1280. The *Perkins* Court reviewed the trial court's denial of a defendant's motion to sever her case from that of her husband's. The defendant's appeal focused on three arguments: that her husband would have testified in her defense at a separate trial; that she suffered because of a prejudicial spillover of evidence at the

---

ble anyway under Fed.R.Evid. 404(b), as showing intent or lack of mistake, etc.."); *United States v. Johnson,* 820 F.2d 1065, 1070 (9th Cir.1987) (Under 404(b) evidence of both robberies would have been cross-admissible on the issue of identity and modus operandi; therefore joinder not prejudicial).

Although this application of Rules 404(b) and 403 is quite sensible, the principles underlying these rules implicitly or explicitly inform every stage of a court's inquiry with respect to joinder and severance issues. The central question is whether evidence of the other offenses would be relevant under 404(b) and cross-admissible in

separate trials. If the answer is no, joinder is simply inappropriate.

28. Under Rule 14, the trial court is directed to weigh the—often conflicting—policies of judicial economy and the protection of the rights of criminal defendants. While judicial economy suggests that joinder of offenses, avoiding multiple trials, it has been long noted that "the doctrine of trial expediency [permits joinder] only if .... it ... may be effected without interference with substantial justice." 8 Moore's Federal Practice ¶ 13.03 at 13–6; *see also id.* ¶ 13.02, at 13–2; Charles Alan Wright, Criminal Federal Practice and Procedure: Criminal § 212, at 426.

joint trial, and that the joinder was inappropriate because the co-defendants were married at the time of the trial. *Id.*

The *Perkins* Court determined first that, where the two co-defendants were charged jointly with conspiracy and with the same substantive offense with regard to the same drug transaction, and where most of the evidence against each was identical, joinder was presumptively valid under Rule 8. The *Perkins* Court then went on to consider the question of severance, noting:

> It is settled that a motion to sever under Fed.R.Crim.P. 14 is addressed to the district court's discretion.... Otherwise, it has been said that denial of a severance motion will be reversed only upon the appellant's maintenance of the heavy burden of showing substantial prejudice as a result of joint trial, amounting to a miscarriage of justice.

*Id.* [citations omitted], cited with approval in *United States v. Sabatino,* 943 F.2d 94, 96 (1st Cir.1991); *United States v. Jones,* 10 F.3d 901, 908–909 (1st Cir.1993); *see also Zafiro v. United States,* 506 U.S. 534, 538–540, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993); *United States v. Smith,* 46 F.3d 1223, 1230 (1st Cir.1995).[29] Based on the facts presented at trial, the *Perkins* Court concluded that substantial prejudice, amounting to a miscarriage of justice, had not occurred and the district court's ruling should not be disturbed.

This case is not *Perkins.* Not only is the defendant's burden before the trial court lighter, but, as discussed above, evidence of the defendant's alleged other bad acts would not be cross-admissible in separate trials on the two groups of offenses.

Where, as in this case, the overlap between the two schemes, in terms of evidence to be presented at trial, seems slight, the concerns of judicial economy balance lightly against the dangers of jury confusion and conviction based on propensity evidence.

Accordingly, I find that substantial prejudice would result from admission into evidence of other alleged bad acts, precisely the sort of prejudice warned against by Rule 404(b) and that, under Rule 14, severance should be allowed.

## IV. CONCLUSION

For the foregoing reasons, I **ALLOW** the defendant's Motion for Separate Trials and order, with respect to the Superseding Indictment returned against the defendant, Edward Buchanan, that Counts I through VII and Counts XVI through XXV be severed and tried separately from Counts VIII through XV, inclusive.

**SO ORDERED.**

---

**29.** Indeed, as *Perkins* made clear, the miscarriage of justice standard is appropriate on review—when all the evidence is examined in toto, and in deference to the trial court's discretion. However that heavy burden is not imposed upon a defendant at the trial court level. *See Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ("A district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment.")

A brief look at *Perkin's* progeny clarifies what at first glance might appear to be competing standards for granting severance in the first instance. In *United States v. Jones,* the First Circuit intones the same general principle announced in *Perkins:* that decisions with respect to Rule 14 severance are left to the sound discretion of the trial court; that reasons of judicial economy generally counsel in favor of joinder, in that case of defendants not multiple offenses with respect to a single defendant, "absent a strong showing of prejudice," and that "in order to obtain severance"—on review—a defendant "must show that substantial prejudice, amounting to a miscarriage of justice, would result from a joint trial." *Jones,* 10 F.3d at 908–909. The *Jones* Court cited to *Sabatino* for this proposition. Indeed, the First Circuit emphasizes that this burden is a burden on review: "Mere speculative allegations as to possible prejudice from joinder do not sustain the burden of showing an abuse of discretion in denying a motion for severance." *Id.* at 909.