**UNITED STATES of America,
Appellee,**

v.

**Theodore PRESLEY, Defendant–
Appellant.**

**Docket No. 00–1790.**

United States Court of Appeals,
Second Circuit.

Oct. 11, 2001.

Kimberly A. Schechter, Federal Public Defender's Office; Jay Ovsiovitch, on the brief, Buffalo, NY, for defendant-appellant.

Richard Power Maigret, Assistant United States Attorney for the Western District of New York; Denise E. O'Donnell, United States Attorney, Joseph J. Karaszewski, Assistant United States Attorney, on the brief, Buffalo, NY, for appellee.

Present McLAUGHLIN, POOLER, Circuit Judges, and SAND, District Judge.\*

**SUMMARY ORDER**

Appeal from judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *J.*) convicting defendant after a jury trial of two counts of possession of more than 5 grams of cocaine base with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and one count of unlawfully carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, AD-

JUDGED, AND DECREED that the judgment of the District Court be and it hereby is **AFFIRMED.**

Defendant-appellant Theodore Presley appeals from the November 28, 2000, judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *J.*) convicting him after a jury trial of two counts of possession of more than 5 grams of cocaine base with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and one count of unlawfully carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The district court sentenced Presley to 121 months imprisonment, five years supervised release, and a $300 special assessment.

A federal grand jury returned a five-count indictment against Presley on February 16, 1999. Counts 1 through 3 concerned a June 7, 1998, incident in which Niagara Falls police stopped the car Presley was driving when it sped through a yellow light. During the course of the stop, police found a loaded .380–caliber handgun under the floor mat on the front passenger side of the car. Police arrested the driver, Presley, and his passenger, Donald Scott. While on the way to the police station, Presley admitted to an officer that he possessed crack cocaine and said that he sold it to take care of his kids. Police found a small package containing 14.3 grams of crack cocaine hidden in Presley's pants. Police placed Presley and Scott in the same holding cell. Presley later told police that the gun in the car was his and did not belong to Scott. Presley signed a statement to that effect, and police released Scott. As a result of this incident, the grand jury charged Presley

with possession of cocaine base with the intent to distribute it, the lesser included offense of simple possession of cocaine base, and unlawful carrying of a firearm.

Counts 4 and 5 concerned a December 6, 1998, incident in which Niagara Falls police stopped a car Presley was driving when it failed to signal a turn. The driver was not wearing a seat belt, and police soon learned that he was driving without a valid license or permit. Police arrested Presley but released his two passengers. Police found $5,090 in cash in an armrest between the driver's seat and passenger seat. At the police station, police found 7.42 grams of crack cocaine in a small package hidden in Presley's pants. As a result of this incident, the grand jury charged Presley with possession of cocaine base with the intent to distribute it and the lesser included offense of simple possession of cocaine base.

A jury trial took place on April 11 through 18, 2000. Pursuant to Fed. R.Evid. 404(b), the government presented testimony of New York State Police Investigator Jimmie Phelps that Presley sold him .10 grams of crack cocaine for $20 on February 5, 1999, while Phelps was working undercover. Presley was convicted in state court as a result of the sale. The government argued that this Rule 404(b) evidence was relevant to show Presley's intent to distribute the crack cocaine that police found in June and December 1998. The government also presented the testimony of Niagara Falls Police Detective John Galie, who testified as an expert about drug trafficking practices, including the quantities of drugs typically sold and methods of packaging drugs for sale. The district court did not permit Presley to admit a record of the conviction of Donald Scott, Presley's passenger on June 7, 1998, to show that Presley's statement admitting ownership of the gun was involuntary. On April 18, 2000, the jury convicted Presley on counts 1, 3 and 4. The district court sentenced Presley on November 16, 2000, and defendant appeals his conviction.

Presley argues first that the district court abused its discretion by admitting the Rule 404(b) evidence of the February 1999 drug sale and resulting conviction because it was not relevant to show Presley's past intent and was unduly prejudicial. Specifically, Presley contends that the evidence was irrelevant to show past intent because the February 1999 sale was dissimilar to the charges on trial, which involved larger quantities of crack cocaine and possession of the drugs rather than the act of selling them. We review the court's admission of Rule 404(b) evidence for abuse of discretion. *United States v. Aminy*, 15 F.3d 258, 260 (2d Cir.1994). Courts may properly admit evidence of acts defendant took subsequent to the crimes for which he is on trial in order to prove defendant's intent. *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir.1998); *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir.1990). The subsequent similar act evidence, however, must be relevant to an issue other than criminal propensity. *Germosen*, 139 F.3d at 128. We hold that Judge Arcara did not abuse his discretion in admitting the subsequent similar act evidence as relevant to show Presley's intent to sell crack cocaine. Although less crack cocaine was involved in the February 1999 sale, the difference does not amount to a huge disparity and is consistent with a dealer who repackages crack into smaller amounts for distribution. Because the February 1999 drug sale is no more inflammatory or disturbing than the crimes for which Presley was on trial, there was little danger that the Rule 404(b) evidence unfairly prejudiced him. The district court also gave limiting instructions telling the jury for what purpose it could consider the evidence.

■ Defendant next contends that the district court abused its discretion in permitting Detective Galie to testify as an expert because his expert opinion was not based on reliable information, the district court did not conduct a hearing before admitting the testimony, and the testimony essentially told the jury how to decide the key trial issues. We will not reverse the district court's decision absent manifest error. *United States v. Feliciano*, 223 F.3d 102, 120 (2d Cir.2000), *cert. denied*, ——— U.S. ———, 121 S.Ct. 1406, 149 L.Ed.2d 348 (2001). It is a common and acceptable practice for trial courts to admit the expert testimony of government agents based on the agents' experience, and there was no manifest error in Judge Arcara's decision to do so in this case. *See United States v. Tapia–Ortiz*, 23 F.3d 738, 740–41 (2d Cir. 1994); *see also United States v. Boissoneault*, 926 F.2d 230, 232–33 (2d Cir.1991). Although Presley argues that a hearing was required before admitting the expert testimony, we see no error in the district court's assessment of the reliability of the evidence through briefing and oral argument, among other things. Finally, the actual testimony of Detective Galie was proper and did not intrude on the jury's function, and the district court properly instructed the jury regarding its evaluation of expert testimony. We therefore reject defendant's argument on this point.

■ Presley also argues that the district court abused its discretion in precluding defense evidence of Donald Scott's prior felony conviction because the evidence raised reasonable doubt regarding the voluntariness of Presley's statement admitting ownership of the gun. According to Presley, Scott, as a convicted felon facing another felony for mere possession of a firearm, had an interest in Presley claiming ownership of the gun. We review the district court's refusal to admit the evidence for abuse of discretion. *United States v. Han*, 230 F.3d 560, 564 (2d Cir. 2000). The district court precluded the evidence of Scott's prior conviction because defendant offered no evidence in support of his confusing and speculative theory that Scott somehow coerced or persuaded Presley to claim ownership of the gun. We see no error in the district court's assessment of the proposed evidence.

■ Defendant argues next that the government improperly joined counts 1, 2 and 3 with counts 4 and 5 and that the district court abused its discretion in denying Presley's motion to sever the counts. According to Presley, the two underlying incidents were not sufficiently similar to permit joinder and he suffered prejudice because evidence of the gun and his admission concerning the June 1998 incident spilled over into the jury's consideration of the December 1998 incident. We review *de novo* the district court's decision to permit joinder, *United States v. Tubol*, 191 F.3d 88, 94 (2d Cir.1999), and we review for abuse of discretion the district court's denial of defendant's motion to sever the counts. *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir.1991). Joinder is appropriate if, among other things, the offenses charged are of the same or similar character. Fed.R.Crim.P. 8(a). The rule does not require that the two crimes be the same but instead requires that they possess a general likeness, be somewhat alike, or resemble each other in many respects. *United States v. Werner*, 620 F.2d 922, 926 (2d Cir.1980) (citing Webster's New International Dictionary 2d ed.).

We see no error in either the joinder of the counts or the court's denial of severance. Contrary to defendant's contention, there is no significant difference between counts 1, 2 and 3, which are based on the June 1998 traffic stop, and counts 4 and 5, which are based on the December 1998 traffic stop. The incidents bear strong

factual similarities because both concerned stops of cars Presley drove and similar amounts of crack cocaine packaged in similar ways and hidden in Presley's pants. The gap of time of six months between the incidents is minimal, and the presence of a gun and defendant's admission to police during the June incident did not create sufficient differences to warrant severance. Defendant argues that these latter two distinctions were a source of prejudicial spillover for the jury's consideration of counts 4 and 5, but he failed to show substantial prejudice as required. *See Werner,* 620 F.2d at 928–29. The district court instructed the jury to consider each count separately, and the record contains no indication that the jury failed to do so. We therefore reject Presley's claim of error.

■ Presley contends next that the district court's instruction regarding count 3 was in error because it did not sufficiently convey to the jury the required nexus between the firearm and a drug trafficking offense. According to defendant, the instruction that Judge Arcara gave permitted the jury to convict Presley on count 3 for merely possessing a gun during the course of drug trafficking. We review this issue of law *de novo* and look at the jury charge as a whole to determine whether the court properly instructed the jury. *United States v. Caban,* 173 F.3d 89, 94 (2d Cir.1999). The instruction that Judge Arcara read to the jury was a standard charge informing the jury that the government had to prove, among other things, that "defendant had the weapon within his control in such a way that it furthered the commission of the drug trafficking crime, or was an integral part of the commission of the crime." The instruction specifically stated that "it is not sufficient to prove the carrying, if all the Government has proved is that the firearm was transported in a vehicle in which the defendant was riding." The jury charge as a whole simply does not lend itself to the interpretation that defendant posits. Rather, the charge correctly describes the required connection between defendant's carrying of a firearm and his commission of a drug trafficking crime. *See Smith v. United States,* 508 U.S. 223, 237–38, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).

Finally, Presley argues that the cumulative effect of the district court's errors during trial warrants reversal of his conviction. Because we have found that none of the district court's rulings was in error, we reject this derivative claim as well. We have considered all of defendant-appellant's remaining arguments and find them to be without merit.