NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-3077

———————

UNITED STATES OF AMERICA

v.

BRYAN K. RUSSO,

Appellant

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-09-cr-00211-001)
District Judges: Hon. Donetta W. Ambrose and Hon. Thomas M. Hardiman[*]

———————

Submitted Under Third Circuit LAR 34.1(a)
September 19, 2012

———————

Before: AMBRO, GREENAWAY, JR., and TASHIMA,[**] <u>Circuit Judges</u>

(Filed: January 17, 2013)

---

[*]     Hon. Thomas M. Hardiman, Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

[**]     Hon. A. Wallace Tashima, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

---

OPINION

---

TASHIMA, <u>Circuit Judge</u>

Appellant Bryan Russo appeals his conviction on one count of wire fraud following a jury trial. Appellant argues that the wire fraud count was improperly joined under Rule 8(a) of the Federal Rules of Criminal Procedure with the remaining three counts of the Superseding Indictment. Alternatively, Appellant contends that the District Court abused its discretion in declining to sever the counts pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure. We have jurisdiction under 28 U.S.C. § 1291, and we will affirm.

I.

In 2001, Appellant and two associates purchased the Chesapeake Steak & Seafood Restaurant (the "Chesapeake"). By 2005, the Chesapeake had filed for Chapter 11 bankruptcy. Following the bankruptcy filing, Appellant's mother, Karen Russo, arranged to purchase the restaurant, but Appellant continued to manage its daily operations.

In early 2006, the Chesapeake continued to experience financial difficulties and was in need of working capital. It was at this point that the transaction underlying the wire fraud conviction occurred. Appellant was referred to Dennis Lint, a loan broker and former police officer. Lint arranged for Karen Russo to obtain financing from Financial

Pacific Leasing, LLC ("Financial Pacific") under a complicated equipment leasing agreement. Financial Pacific was told that the agreement would operate in the following manner: Financial Pacific would pay $32,000 to purchase 160 chairs from a company called TNT Equipment, and TNT Equipment would deliver the chairs to the Chesapeake. The Chesapeake would then lease the chairs from Financial Pacific with the option of purchasing the chairs at the end of the lease period.

There is no dispute that the representations made to Financial Pacific were false in that TNT Equipment never delivered the chairs to the Chesapeake. The Government takes the position that the chairs never existed, while Appellant contends that the chairs were already owned by Karen Russo and in the Chesapeake's inventory prior to the arrangement with Financial Pacific.[1] Regardless, the Government elicited testimony from both Lint and an official with Financial Pacific that Appellant perpetuated the scheme by falsely confirming in a telephone call with Financial Pacific that the chairs had been delivered from TNT Equipment to the Chesapeake. It was only after this phone confirmation that Financial Pacific granted final approval of the agreement. Lint testified

---

[1] Appellant contends that the transaction took the form of a sale/leaseback arrangement in that the Chesapeake first entered a paper transaction to sell the chairs to TNT Equipment, and then leased the chairs back from Financial Pacific after Financial Pacific purchased them from TNT Equipment. Appellant does not contend, however, that Financial Pacific was aware of the original "sale" from the Chesapeake to TNT Equipment.

that Appellant also advanced the scheme by providing Lint with a falsified income tax return for Karen Russo, which Lint submitted to Financial Pacific in support of the financing application. Ultimately, Financial Pacific issued a payment of $32,000 to TNT Equipment, and TNT Equipment remitted $28,428 of this amount back to the Chesapeake.

Despite this additional capital, the Chesapeake continued to struggle and eventually closed in December 2006. By this point, the mortgage lender for the property had already initiated foreclosure proceedings and a sheriff's sale was scheduled for January 8, 2007. After Karen Russo notified the lender of efforts being made to locate a buyer for the property, the sale was postponed until February 5, 2007. On the evening of January 30, 2007, a fire burned the Chesapeake to the ground. The fire was later determined to be incendiary. Appellant submitted a claim to the Chesapeake's insurance carrier, Mid-Continent Insurance Company ("Mid-Continent") and, after an extensive investigation, Mid-Continent agreed to pay the claim.

II.

In June 2009, Appellant was charged with one count of arson, in violation of 18 U.S.C. § 844(i), and two counts of mail fraud, in violation of 18 U.S.C. § 1341, with the latter two counts stemming from the insurance claim made to Mid-Continent. In August 2009, the Government filed a Superseding Indictment, which added a charge of wire

fraud, under 18 U.S.C. §§ 1343 & 2, in connection with the lease arrangement with Financial Pacific.

In a pretrial motion, Appellant moved to sever the wire fraud count from the other counts of the Superseding Indictment, arguing that joinder was improper under Rule 8(a), or in the alternative, that severance was warranted pursuant to Rule 14(a) because prejudice would result from a consolidated trial on the counts. Judge Ambrose, then presiding over the case, denied Appellant's motion. A four-day trial commenced on January 18, 2011, presided over by Circuit Judge Hardiman, sitting by designation. At the close of trial, Appellant moved for a mistrial, citing the same misjoinder and severance grounds put forward in his pretrial motion. Judge Hardiman denied the motion. The jury returned a verdict of guilty on the wire fraud count, but not guilty on the arson and mail fraud counts.[2] Appellant was subsequently sentenced by Judge Ambrose to five years' probation with eight months' home detention.

On appeal, Appellant renews his argument that the wire fraud count was erroneously joined with the other counts of the Superseding Indictment; alternatively, he contends that it should have been severed from those counts as a matter of discretion.

---

[2]     The Government had voluntarily dismissed one of the two mail fraud counts prior to trial.

III.

We review *de novo* a district court's determination concerning the joinder of counts pursuant to Rule 8.  *United States v. Jimenez*, 513 F.3d 62, 82 (3d Cir. 2008). Rule 8(a) provides that:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).  Appellant disputes that the transaction with Financial Pacific is "of the same or similar character" or part "of a common scheme or plan" with the arson and mail fraud allegations underlying the other counts of the Superseding Indictment.

We find it to be a close decision whether the counts were properly joined in this action.  We are mindful that "[t]he joinder of the defendant's offenses is consistent with the purpose of [Rule 8] to promote economy of judicial and prosecutorial resources," *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987) (citing *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980)), but the connection between the counts in this case is tenuous.  The government argues that the charges are related because, in an examination conducted by Mid-Continent following the fire, Appellant listed the chairs supposedly received from TNT Equipment as among the restaurant's inventory when the fire occurred, which the government suggests is probative of Appellant's intent to defraud

6

Mid-Continent.  Yet, this connection between the counts was not described in the mail fraud allegations in the Superseding Indictment, nor was it pursued at trial.  Nevertheless, we need not reach a firm resolution as to whether the counts were improperly joined, because, even assuming that they were, the error was plainly harmless.  *Cf. Jimenez*, 513 F.3d at 83.

Misjoinder warrants reversal of a conviction "only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict."  *Id.* (internal quotation marks omitted).  Factors that bear on prejudice in this context include whether there is overwhelming evidence of the defendant's guilt, whether the evidence used to establish one of the counts would have been admissible on the trial of the other counts, whether the jury received proper limiting instructions, and whether the jury's verdict indicates that it was able to compartmentalize the charges.  *See United States v. Lane*, 474 U.S. 438, 450 (1986); *Jimenez*, 513 F.3d at 83.

Here, there is overwhelming evidence of Appellant's knowing participation in the wire fraud scheme.  In particular, there was credible testimony from multiple witnesses that Appellant falsely confirmed in a phone conversation with Financial Pacific that TNT Equipment had delivered chairs to the Chesapeake.  The District Court also gave an appropriate limiting instruction to the jury, instructing it that it must separately consider the evidence for each offense and not allow its verdict on any offense to influence its decision on the others.  We presume that a jury follows such instructions and therefore

7

view the instructions as "persuasive evidence" that the joinder of counts did not prejudice Appellant. *United States v. Walker*, 657 F.3d 160, 171 (3d Cir. 2011) (quoting *United States v. Lore*, 430 F.3d 190, 206 (3d Cir. 2005)). Finally, the jury's acquittal of Appellant on the arson and mail fraud counts is a compelling indication that it was able to compartmentalize these charges from the wire fraud count. *See Jimenez*, 513 F.3d at 83. Based on the totality of these factors, we conclude that Appellant did not suffer actual prejudice as a result of any misjoinder.

## IV.

For the same reasons, we reject Appellant's alternative argument that, if the counts did meet the requirements for joinder under Rule 8, the District Court abused its discretion in declining to sever them pursuant to Rule 14.[3] "While Rule 8 requires severance where [counts] were improperly joined, Rule 14 permits a district court to sever properly joined [counts] and order a separate trial where a consolidated trial appears to prejudice the defendant." *Walker*, 657 F.3d at 170 (internal quotation marks omitted). Appellant has failed to "pinpoint clear and substantial prejudice resulting in an unfair

---

[3] Rule 14 provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

trial," which is his burden in order to sustain an abuse of discretion claim under Rule 14.

*United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010) (internal quotation marks omitted); *see also United States v. Eufrasio,* 935 F.2d 553, 568 (3d Cir. 1991).

V.

For the foregoing reasons, we will affirm the judgment of the District Court.